# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

TIMOTHY MARSH
6127 Redwood Lane
Alexandria VA 22310

      Plaintiff,

v.

GERALD CURRAN, ESQ.
Curran, Moher, Weis
10300 Eaton Place
Fairfax, VA 22030

DEMIAN J. McGARRY, ESQ.
Curran, Moher, Weis
10300 Eaton Place
Fairfax, VA 22030

THE LAW OFFICE OF CURRAN, MOHER,
WEIS, P.C.
10300 Eaton Place
Fairfax, VA 22030
      **SERVE ON RESIDENT AGENT:**
      Grant T. Moher
      10300 Eaton Place, S. 520
      Fairfax, VA 22030

KRISTINA HAMPTON
13558 Mitchells Way
West Friendship, MD 21794

DEREK HAMPTON
13558 Mitchells Way
West Friendship, MD 21794

      and

DANIELLE RICHARDS
2707 Dunleer Road
Ellicott City, MD 21042

      Defendants.

Case No.: <u>1-18-cv-00787-LO-IDD</u>

Jury Trial Demanded

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff, Timothy Marsh, and for his First Amended Complaint against Defendants Gerald Curran, Esq., Demian McGarry, Esq., The Law Office of Curran, Moher, Weis, P.C., Kristina Hampton, Derek Hampton and Danielle Richards, alleges as follows:

## INTRODUCTION

1.      This case relates to a violation of one of the oldest privileges in litigation—the attorney-client privilege—which occurred in the underlying divorce case now pending before the Circuit Court of Loudoun County, Virginia.

2.      In or about October 2016, Plaintiff Timothy Marsh's wife, Andrea Marsh (plaintiff in the underlying divorce case), Kristina Hampton (Andrea Marsh's sister) and Derek Hampton (Andrea Marsh's brother-in-law) began surreptitiously and illegally recording Timothy Marsh's conversations.  In or about January 2017, when Timothy Marsh retained Brian West as his attorney in the underlying divorce case, Andrea Marsh, Kristina Hampton and Derek Hampton also began recording attorney-client privileged conversations between Timothy Marsh and his attorney, Brian West.

3.      Andrea Marsh's attorneys in the divorce case, Gerald Curran, Esq., Demian McGarry, Esq. and The Law Office of Curran, Moher, Weis, P.C., used and benefited from the illegally intercepted recordings by gaining a tactical advantage in the divorce case, as well as leverage in seeking financial advantage in the divorce case, despite attorney Brian West's repeated warnings that such actions crossed an ethical line and were illegal.

4.      In the divorce case, on or about March 30, 2018, Judge Horne of the Circuit Court of Loudoun County, Virginia, found as a matter fact and law that the interceptions of Tim Marsh's conversations violated Virginia's wiretapping statute.  *See* Paragraph 33, below.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

5.     Andrea Marsh never denied the existence of the illegal recordings.  Andrea Marsh originally refused to answer questions relating to the illegal recordings under the attorney work product doctrine, thereby implicating her attorneys, Gerald Curran, Esq., Demian McGarry, Esq. and The Law Office of Curran, Moher, Weis, P.C., in the illegal recordings.  Subsequently, Andrea Marsh has also refused to answer questions relating to the illegal recordings by pleading the Fifth Amendment to the United States Constitution.

6.     It has been unconscionable, illegal and in violation of several ethics cannons for Gerald Curran, Esq., Demian McGarry, Esq. and The Law Office of Curran, Moher, Weis, P.C. to continue to represent Andrea Marsh.

## PARTIES

7.     Plaintiff Timothy Marsh is, and was at all times relevant to this Complaint, a resident of the Commonwealth of Virginia.

8.     Defendant Gerald ("Gerry") Curran, Esq. (hereafter, "Defendant Curran") is, and was at all times relevant to this Complaint, a resident of the Commonwealth of Virginia.  Defendant Curran is an attorney with the law firm of Curran, Moher, Weis, who represents Plaintiff's wife, Andrea Marsh, in her currently pending divorce proceeding against Plaintiff.

9.     Defendant Demian J. McGarry, Esq. (hereafter, "Defendant McGarry") is, and was at all times relevant to this Complaint, a resident of the Commonwealth of Virginia.  Defendant McGarry is an attorney with the law firm of Curran, Moher, Weis, who represents Plaintiff's wife, Andrea Marsh, in her currently pending divorce proceeding against Plaintiff.

10.     Defendant The Law Office of Curran, Moher, Weis, P.C. (hereafter, "Defendant Curran Law Firm"), is the law firm of which Defendant Curran is a principal and Defendant McGarry is an associate, located at 10300 Eaton Place, Fairfax, VA 22030.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

11.     Defendant Kristina Hampton (hereafter, "Defendant K Hampton") is, and was at all times relevant to this Complaint, a resident of the State of Maryland.  Defendant K Hampton is Andrea Marsh's sister and Plaintiff's sister-in-law.

12.     Defendant Derek Hampton (hereafter, "Defendant D Hampton") is, and was at all times mentioned in this Complaint, a resident of the State of Maryland.  Defendant D Hampton is Defendant K Hampton's husband and Plaintiff's brother-in law.

13.     Defendant Danielle Richards (hereafter, "Defendant D Richards") is, and was at all times mentioned in this Complaint, a resident of the State of Maryland.  Defendant D Richards is the sister of both Andrea Marsh and Defendant K Hampton, as well as the sister-in-law of Defendant D Hampton.

## JURISDICTION AND VENUE

14.     The Court has original jurisdiction over this case pursuant to 28 U.S.C. §1331 because the original claim in this civil action arises under the Constitution, laws, or treaties of the United States, specifically 18 U.S.C. §2510 *et seq*.

15.     This Court has supplemental jurisdiction over the additional claims that do not arise under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §1367 because the additional claims are substantially related to the original claim.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims for relief occurred in this district.

## FACTS

17.     On January 25, 2017, Plaintiff's wife, Andrea Marsh, filed a suit for divorce in the Circuit Court of Loudoun County.  The complaint alleged, *inter alia*, that Plaintiff committed adultery.  Attendant to the allegations of adultery are the sources from which such allegations

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

arose, which upon information and belief, include illegal interceptions of Plaintiff's telephone and other communications, without Plaintiff's knowledge or consent.

18. Upon information and belief, Andrea Marsh and Defendants K Hampton and D Hampton began intercepting Plaintiff's telephone and other communications, without Plaintiff's knowledge or consent, as early as October of 2016.

19. Andrea Marsh and Defendants K Hampton and D Hampton were not parties to Plaintiff's telephone and other communications that Defendants intercepted and/or used without Plaintiff's knowledge or consent.

20. Upon information and belief, Defendants K Hampton and D Hampton, with the assistance of Andrea Marsh, placed recording devices in Plaintiff's house, including but not limited to Plaintiff's home office, in Plaintiff's car, and/or on Plaintiff's iPhone. Defendant D Hampton, an information security and computer networking specialist, has access to and expertise in technology and computer software that would enable him to engage in and assist Andrea Marsh and the other Non-Lawyer Defendants in surreptitiously intercepting Plaintiff's private electronic communications. The recording devices were placed in Plaintiff's house, Plaintiff's car, and/or on Plaintiff's iPhone in order to intercept Plaintiff's telephone and other communications without Plaintiff's knowledge, authorization or consent.

21. In or about January 2017, when Timothy Marsh retained Brian West as his attorney in the underlying divorce case, Andrea Marsh and Defendants K Hampton and D Hampton also began recording and illegally intercepting attorney-client privileged and confidential conversations between Timothy Marsh and his attorney, Brian West.

22. Plaintiff viewed on the shared home computer numerous emails circulated between and among Andrea Marsh and Defendants K Hampton, D Hampton and D Richards and other

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

family members describing the contents of audio recordings, and one email attaching two audio recordings of Plaintiff's private communications with others.   Upon information and belief, Andrea Marsh and Defendants K Hampton, D Hampton and D Richards shared the illegally intercepted communications, including the attorney-client privileged and confidential communications between Plaintiff and his attorney, among themselves and with Andrea Marsh's first attorney in the divorce case, Kathleen O'Brien.   Kathleen O'Brien withdrew from representation of Andrea Marsh in the divorce case on or about March 27, 2017.

23.     Andrea Marsh, and upon information and belief, Defendants K Hampton, D Hampton and D Richards, then shared the illegally intercepted communications, including attorney-client privileged and confidential communications, with Andrea Marsh's current attorneys in the underlying divorce case, Defendants Curran and McGarry and the Defendant Curran Law Firm.

24.     On April 6, 2017, Andrea Marsh (a/k/a Andrea Lilley) sent an email to Defendant Curran containing continuing illegal interceptions of Plaintiff's telephone and other communications, including Plaintiff's attorney-client privileged and confidential conversations with his attorney, Brian West, stating:

> Tim was talking to Monika-planning a trip saying she needs her passport and drivers [sic] license.
> She is helping Tim put stuff together for Brian [West].
> He said he is taking his Rosy phone into work so he can talk to her. (His second phone)  He said he is purposely keeping a negative balance every month to show he has no money.
> Said Brian is sending him articles about stock options and whether the wife gets any options based on timing of separation and divorce.
> Getting a check from his 401K on Friday to pay Amex.
> Met Monika for lunch.  Told her to wait in the lobby so they are not photographed together walking in.  Not sure where they ate.
> Brian [West] bought Tim's Panerai watch for $7500 to put as a credit toward his legal fees.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

*See* E-mail from Andrea Lilley to Gerald Curran, dated April 6, 2017, Our conversation this morning, attached hereto as ***Exhibit A***.

25.     The details of Plaintiff's telephone and other communications provided in the April 6, 2017 email from Andrea Marsh to her attorney, Defendant Curran, far exceed any openly available information and could only have been obtained through the illegal interceptions of Plaintiff's telephone and other communications.

26.     During the March 30, 2018 Hearing in the underlying divorce case, Andrea Marsh was asked about her April 6, 2017 e-mail to Defendant Gerald Curran and repeatedly pleaded the Fifth Amendment:

> **MR. WEST:   Now, in the e-mail to your attorney, you indicate the contents of certain communications between Mr. Marsh and Monika; is that right?**
>
> **ANDREA MARSH:   I plead the Fifth.**
>
> **MR. WEST:   All right.  And you'll see, won't you, that the first line it indicates that Tim was talking to Monika; is that right?**
>
> **ANDREA MARSH:   I plead the Fifth.**
>
> **MR. WEST:   Is it a fact that you did install a device in my client's automobile in which you were recording his telephone conversations?**
>
> **ANDREA MARSH:   I plead the Fifth.**
>
> **MR. WEST:   And not only did you record his telephone conversations, you recorded other conversations that he had with other individuals there in the automobile is that correct?**
>
> **ANDREA MARSH:   I plead the Fifth.**
>
> **MR. WEST:   All right.  It's a fact that you also established a recording device in your home, which allowed for you to record conversations that Mr. Marsh had with other third parties; isn't that right?**
>
> **ANDREA MARSH:   I plead the Fifth.**
>
> **MR. WEST:   And it's a fact that you established doing this in the early fall of 2016; isn't that right?**

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**ANDREA MARSH:   I plead the Fifth.**
...

**MR WEST:   All right.  Now, going back to your e-mail.  You'll note that in the first line, it indicates that Tim was talking to Monika.**
...

**MR. WEST:   Okay.  And, in fact, it reflected information in which you had obtained by listening to the recordings?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   All right.  Now, it also indicates that he was communicating with she, which whom I assume is Monika.  And this conversation is another which you obtained by way of the recording; is that right?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   You also indicate here that said, Brian is sending articles.  Did you understand Brian to be me?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   All right.  You also indicate here that he met Monika for lunch.  Can you tell us the date when you learned that he was going to meet Monika for lunch?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   And can you tell us that it was before the private investigator was engaged or not?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   All right.  It also indicated information about him receiving monies from his 401 K plan to pay American Express; is that right?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   All right.  It also indicates that he met Monika for lunch, does it not?**

**ANDREA MARSH:   You just asked me that.  I plead the Fifth.**

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**MR. WEST:    Okay.   It also indicates -- it looks like a conversation you overheard, in which I agreed to purchase a watch from your husband.   Did you learn that from that conversation?**

**ANDREA MARSH:   I plead the Fifth.**

Transcript of Court's Ruling, *ANDREA L. MARSH*, Plaintiff, v. *TIMOTHY M. MARSH*, Defendant, Case No.: 106480, March 30, 2018 (hereafter March 30 Transcript), 14:10-15:13, 16:14-18:11 (emphasis added), attached hereto as ***Exhibit B***.

27.    Upon information and belief, Plaintiff's private financial and identifying information related to Plaintiff's Fidelity 401K individual retirement account was also illegally obtained and examined by K Hampton and D Hampton with Andrea Marsh's assistance.   Neither Andrea Marsh nor Defendants K Hampton and D Hampton were authorized by Plaintiff to view the private financial and identifying information related to Plaintiff's Fidelity 401K individual retirement account. *See* March 2017 e-mails between and among Defendant K Hampton and Andrea Marsh, and referencing instructions from Defendant D Hampton ("Derek"), attached hereto as ***Exhibit C***.

28.    Defendant K Hampton in turn shared Plaintiff's private financial and identifying information related to Plaintiff's Fidelity 401K individual retirement account with Defendant Curran, by directly communicating with Defendant Curran via email, stating: "I'm Andrea's sister, Kristina.  I've been helping her to get through this difficult time.  I'm excited that you will be taking over things.  I know Andrea is calling you this Monday.  I wanted to send you some information I have regarding his transfers & transactions he made just this past week.  I attach 2 below.  I'm not sure why he is able to move their money around plus not inform Andrea of any of this.  He continues to control everything and deletes emails so she doesn't see them.  He deleted these and the trash too.  That's why Andrea has been sending things to me since he also deletes from her iCloud.  The 3rd transaction, Thursday or Friday, he withdrew $6,000 & deposited, all

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

cash, into their joint account to pay his own personal credit cards. This $ came from the house, which is Andrea's equity. He is continuing to financially ruin her and do whatever he wants. Please advise Andrea on this matter. It's really getting out of hand. If you need anything or have any questions please feel free to email or call me. I do have evidence from Mike, the PI, plus contact information for mistresses. Thanks so much! -- Kristina." *See **Exhibit C*** at March 26, 2017 email from Defendant Kristina Hampton to Defendant Gerald Curran with cc: to Andrea Marsh ("andrealilley2017@gmail.com").

29.     Plaintiff never authorized Defendants to access, view, and/or record any of Plaintiff's private telephone and other communications.   With respect to telephone communications, they took place in the privacy of Plaintiff's home, office, or car, where Plaintiff had a reasonable expectation of privacy. And with respect to emails and financial records, none of the Defendants were authorized to access this information.

30.     Furthermore, in or about April 2017, Plaintiff inadvertently discovered two separate audio recordings of his private telephone conversations on the home computer that Plaintiff shared with Andrea Marsh.

31.     Specifically, Plaintiff discovered an audio recording created January 10, 2017 between Plaintiff and Monika Pawar and an audio recording created March 25, 2017 between Plaintiff and Monika Pawar. *See* copies of snapshots of the audio files and metadata, attached hereto as ***Exhibit D Part I and Exhibit D Part II***. Both of these recordings were made illegally and without Plaintiff's knowledge or consent, and they were shared between and among Andrea Marsh in Virginia and Defendants K Hampton, D Hampton and D Richards, as well as other family members, in Maryland, via email commenting on the contents of the recordings.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

32.     When asked about the January 10, 2017 and the March 25, 2017 audio recordings at the March 30, 2018 Hearing in the underlying divorce case, Andrea Marsh repeatedly pleaded the Fifth Amendment:

**MR. WEST:  All right.  … [T]here is MetaData that reflects there was a recording; is that right?**

**ANDREA MARSH:  I see that.**

**MR. WEST:   And that recording was there present in your e-mail account?**

**ANDREA MARSH:  I plead the Fifth.**

**MR. WEST:   All right.  And there were two recordings, weren't there?  …**

**ANDREA MARSH:  I plead the Fifth.**

**MR. WEST:  And you had many other recordings, did you not?**

**ANDREA MARSH:  I plead the Fifth.**

**MR. WEST:   And you shared those with your counsel, didn't you?**

**ANDREA MARSH:  I plead the Fifth.**
**…**

**MR. WEST:  Do you deny that there were, in fact, recordings in your e-mail of my client?**

**ANDREA MARSH:  I plead the Fifth.**
**…**

**MR. WEST:  You had certain recordations of my client and sent copies of those recordations to other people --**

**ANDREA MARSH:  I plead the Fifth.**

**MR. WEST:   Right.  And you sent them to -- how many sisters do you have?**

**ANDREA MARSH:  I have two.**
**…**

**MR. WEST:  And you sent to each of those two people in Maryland copies of the recordations you had taken in my client's car?**

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**ANDREA MARSH:   I plead the Fifth.**

*See **Exhibit B***, March 30 Transcript, at 31:11-34:9 (emphasis added).

33.    On March 30, 2018, The Honorable Thomas D. Horne, a judge for the Circuit Court

of Loudoun County, found and ruled that the wiretap statute had been violated:

> **Well, clearly, the recordings that were downloaded off of the computer and form the basis of Defendant's 5 and 6 in the case were obtained in violation of the statute that provides those communications were illegally obtained since they do constitute oral communications.**
> **…**
> **And the question that you are going to ask, many of those questions applying the Pomponio rationale to Fifth Amendment claims. That information could be used by a prosecutor to fashion a case against the person who otherwise would be a deprived of the Fifth Amendment claim.  *What the Court is going to do in this case is find that those two recordings clearly violate the statute.***

*See **Exhibit B*** March 30 Transcript, at 118:12-119:20 (emphasis added).

34.    Upon information and belief, Defendants are in possession of many more audio

recordings of the intercepted communications, including Plaintiff's privileged and confidential

communications with his attorney Brian West.

35.    Upon information and belief, Defendants K Hampton and D Richards, with the

assistance and support of Defendant D Hampton, transcribed the contents of the intercepted

telephone and other communications and provided the same to Andrea Marsh and to Defendant

Curran and the Defendant Curran Law Firm.

36.    Specifically, Plaintiff inadvertently discovered a timeline/journal titled "Andrea

Marsh Journal of Tim's Activities" (hereafter, the "Journal") further reflecting the fact that

Plaintiff's telephone and other communications were illegally intercepted, including telephone

conversations that Plaintiff had while in his vehicle, and the Journal was circulated between and

among Andrea Marsh and Defendants K Hampton, D Hampton and D Richards via email

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

discussing how they had compiled the Journal, and the Journal references use of a "tracker."   The

Journal includes the following references to the intercepted telephone and other communications:

> Oct. 23, 2016 – Called Monika to tell her he loved her.
> Oct. 28, 2016 - Tim said he went to Guitar Center for a performance. He was gone for 3 hours (Mike has surveillance evidence). Tim went to Monika's house the whole time. He talked about being [redacted] and performing [redacted] sex.
> Nov. 3, 2016 (?) - Went to lunch in Leesburg with Monika (check for tracker)
> Nov. 12, 2016 – . . . . After lunch, went to Monika's house and slept with her. Talked in the car about how nice she kept herself "[redacted] there" and how good she looked and smelled under the covers. . . . . Tim then proceeded to take Liam over Monika's house to pick her up. Monika starts talking to Liam and he starts crying.
> Nov. 19, 2016 – Tim went to Monika's house after his gig at Smokehouse Live. He was talking about how she was his heart and soul.
> Nov. 26, 2016 - Tim had a band gig in Gaithersburg at Union Jack's. After the gig, got a [redacted] from Sarah [redacted] in the [redacted] in his car.
> Dec. 2, 2016 – Tim was bragging to Rob, his band mate, about having [redacted] after each band job [redacted]
> Dec. 16, 2016 - Tim had lunch with Monika at MOD Pizza in Belmont Plaza Shopping Center. Monika met him there, but afterwards got into Tim's car and gave him a [redacted]. They had other [redacted] activity in the car as well.

*See* "Andrea Marsh Journal of Tim's Activities," attached hereto as ***Exhibit E***.

37.     When asked about the Andrea Marsh Journal of Tim's Activities during the March

30, 2018 Hearing in the underlying divorce case, Andrea Marsh repeatedly pleaded the Fifth

Amendment:

> **MR. WEST:   All right.   Now, if we'll go back to tab number three. This is a Andrea Marsh journal of Tim's activity.   And on the first October 23, 2016 report, it indicates that he called Monika to tell her he loved her; is that right?**
>
> **ANDREA MARSH:   I plead the Fifth.**
>
> **MR. WEST:   And that was information obtained from the illegal recording; right?**
>
> **ANDREA MARSH:   I plead the Fifth.**
>
> **MR. WEST:   Now, the next day you indicate that he met Monika for lunch in Leesburg.   So did you learn that based upon the fact that you overheard the telephone conversation that was recorded?**

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   All right.  On November 3, 2016, there is a recitation here that went to lunch in Leesburg with Monika and in open parenthesis (check for tracker).  That's what it says, doesn't it?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   In fact, you had installed a tracking device on the automobile that was driven by my client; isn't that right?**

**ANDREA MARSH:   I plead the Fifth.**
…

**MR. WEST:   Did you put a tracking device on my client's car?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   All right.  And why are the words, check for tracker here?**

**ANDREA MARSH:   Like I said, I plead the Fifth.**
...

**MR. WEST:   All right.  On November 9th, you relayed information about Monika's birthday and where they went and what they talked about and what they did.  And you got that information by listening to the recordations; isn't that right?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:  All right.  You also went on to allege that they went to Monika's house and they walked to Tim's car.  This was as a result from information you obtained from the recordation; isn't that right?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   All right.  And there is a series of additional claims that you make in your complaint about things which relate to … conversations that Mr. Marsh had with other people in the car; isn't that right?**

**ANDREA MARSH:   I plead the Fifth.**
…

**MR. WEST:   [T]here's a recitation of that Tim was bragging to a band mate and that you related this in your recitation of events, your timeline journal.  Do you see under December 2, 2016?**

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**ANDREA MARSH:  Okay.**

**MR. WEST:   That sets out information that was only obtained as a result of the --**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   If you go a little further down, you'll see there is a claim under December 16th that [redacted] was engaged.  And you got that information as a result of that illegal --**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   And you also on your claim mention there was other [redacted] in the car.  And that also was obtained as a result of the information --**

**ANDREA MARSH:   I plead the Fifth on that as well.**

See *Exhibit B*, March 30 Transcript, at 25:14-28:12, 29:10-30:14 (emphasis added).

38.    Meta-data introduced at the March 30, 2018 Hearing (Exhibit 4) in the underlying divorce case establishes that the Journal document was created by Defendant D Richards (dannirichards).  Specifically, the meta-data establishes: the Journal was "created" on December 31, 2016; the "author" was "dannirichards"; the Journal was "last saved by" "dannirichards" on December 31, 2016; and the "Total editing time" was "01:02:00." *See* screenshot of meta-data of Journal, attached hereto as *Exhibit F*; *see also Exhibit B*, March 30 Transcript at pp. 58-61.

39.    Andrea Marsh and Defendants K Hampton and D Hampton intentionally intercepted Plaintiff's telephone and other communications, and Defendant D Richards intentionally created the Journal from the illegally intercepted communications, to assist Andrea Marsh's attorneys, Defendants Curran and McGarry and the Defendant Curran Law Firm, in gaining tactical and financial advantages, as well as leverage, in the divorce case and building the allegations of adultery and other allegations

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

40.     Initially, upon information and belief, the contents of the illegally intercepted telephone and other communications led to the engagement of the services of a private investigator, Legal Investigations, Inc.  On January 5, 2017, Michael J. Russell, President, Legal Investigations, Inc., sent a letter to Defendant K Hampton, stating:  "At the request of Andrea Marsh, our office undertook an investigation concerning the activities of her husband Tim Marsh.  Please find enclosed our investigative report concerning Mr. Marsh's activities."  *See* January 5, 2017 Letter from Legal Investigations, Inc., attached hereto as ***Exhibit N***.

41.     During the March 30, 2018 Hearing in the underlying divorce case, Andrea Marsh repeatedly plead the Fifth Amendment when asked about providing the illegally intercepted telephone and other communications to the private investigator, Legal Investigations, Inc.:

> **MR. WEST:  When you gave the information to the investigator, that included information you obtained from listening to the conversations that had been had between my client and Ms. Pawar?**
>
> **ANDREA MARSH:  No.  That's not correct.**
>
> **MR. WEST:  So when did you get the recordings?  Was it before or after [the private investigator]?**
>
> **ANDREA MARSH:  I plead the Fifth.**
> **...**
>
> **MR. WEST:  With regard to the information that was given to [the private investigator], how can we be assured that the information didn't include information that you had gotten from the illegal recordations.**
>
> **ANDREA MARSH:  Because I didn't talk to him.  My sister corresponded with him.**
>
> **MR. WEST: But you conveyed the information you had gotten from the tape recordings to your sister.  Is that right?**
>
> **ANDREA MARSH:  No.**
>
> **MR. WEST:  And you didn't tell her about it?**

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**ANDREA MARSH:  I plead the Fifth.**

**MR. WEST:   In fact, she built a timeline based on the information that you had provided to her; isn't that right?**

**ANDREA MARSH:   I plead the Fifth.**
**…**

**MR. WEST:  Tell me were the recordings that you listened to before or after November 4, 2016 [the first date in the private investigator's report]?**

**ANDREA MARSH:  I plead the Fifth.**
**…**

**MR. WEST:   In fact ... November 3, 2016 is before the first date of the investigation for [the private investigator]; isn't that right?**

**ANDREA MARSH:   I plead the Fifth.**
**…**

**MR. WEST:  So you're saying that he followed him at other times separate and apart from the information you'd obtained by listening to the telephone conversations?**

**ANDREA MARSH:  I plead the Fifth.**

See **Exhibit B**, March 30 Transcript at 21:17-25:11, 27:3-27:16 (emphasis added).

42.    The private investigator, Legal Investigations, Inc., followed Plaintiff from November 4, 2016 to January 1, 2017.  During this time, Andrea Marsh and Defendants K Hampton and D Hampton continued to illegally intercept Plaintiff's telephone and other communications to assist the private investigator in conducting the investigation.

43.    After January 1, 2017, the private investigator's report was provided to Defendant Curran and the Defendant Curran Law Firm.  On March 6, 2018, Defendant Curran filed a Supplemental Response to Requests for Production of Documents to provide a copy of the private investigator's report upon which Defendant Curran intends to rely to support his client's claims of adultery.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

44.     As the illegal interceptions of Plaintiff's telephone and other communications continued, Defendants Curran and McGarry and the Defendant Curran Law Firm used the contents of the illegally intercepted communications in connection with the deposition(s) of Monika Pawar.

45.     Specifically, original deposition questions that Defendant Curran sought to ask Monika Pawar included the following questions that could only be based on the illegally intercepted communications:

Q:  In the last 5 years and since you have been unmarried; have you ever performed [redacted] sex on Mr. Marsh?  In VA?  In MD?  In CA?

Q:  How many times have you performed [redacted] sex on Timothy Marsh in the last 5 years while you yourself have not been married?

Q:  In the last 5 years, when, how frequently, where?

Q:  When was the first time you performed [redacted] sex on him?

Q:  When was the last time you performed [redacted] sex on him?

Q:  Approximately how many times have you engaged in [redacted] sex with Timothy Marsh?  Over what period of time?

Q:  Within the last 5 years while you yourself have been unmarried, ever perform [redacted] sex on him in his Land Rover automobile?

Q:  Have you ever performed [redacted] sex on Mr. Marsh in his automobile in a parking garage?

Q:  Have you ever been to Maryland Live Casino with Timothy Marsh?  Were you at Maryland Live Casino in July 2016?

Q:  On 12/23/16 did you have a meal with Mr. Marsh at a McCormick and Schmick's restaurant in Virginia?  You had sex in the car afterwards?  He told you that he was afraid the garage had cameras?  You were wearing a sweater dress with a zipper up the side?

Q:  On 1/2/17 had a meal with Mr. Marsh at my Thai Place in Brambleton, VA?

Q:  Within the last 5 years while you yourself have been unmarried, ever perform [redacted] sex on Mr. Marsh, or have sexual relations with him on 1/2/17?

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Q:  Mr. Marsh was at your residence on 10/28/16?  Did he spend approximately 3 hours at your residence on 10/28/2016?  Did you have sexual relations, including or excluding [redacted] sex on 10/28/2016 with Mr. Marsh?

Q:  Did you see Mr. Marsh on 11/3/16?  Did he pick you up in Leesburg, Virginia?  Where did you and he go on 11/3/16?  Did you have a meal together?  Did he pay for it?  How did he pay for it?

Q:  Did you have sexual relations including or excluding [redacted] sex with Mr. Marsh on November 4, 2016?

Q:  Was Mr. Marsh at your residence on 11/20/16?  Did he spend approximately 3 hours at your residence on that date?  Did you have sexual relations including or excluding [redacted] sex with Mr. Marsh on November 20, 2016?

Q:  On 11/30/16, did you have a meal with Mr. Marsh at the Lightfoot Restaurant in Leesburg, VA?

Q:  Was Mr. Marsh at your residence on 12/12/16?  Did he spend approximately 4 hours at your residence on that date?  Was he there from approximately 9:00 p.m. to 12:30 a.m. on 12/13/16?  Did you have sexual relations including or excluding [redacted] sex with Mr. Marsh on 12/12/16 or 12/13/16?

Q:  Did you have sexual relations, including or excluding [redacted] sex on 12/13/16 with Mr. Marsh?

Q:  Did you have sexual relations, including or excluding [redacted] sex on 12/27/2016 with Mr. Marsh?

Q:  Did you have sexual relations including or excluding [redacted] sex with Mr. Marsh on 12/31/16 and/or 1/1/17?

Q:  On the occasions that Timothy Marsh visited your residence, did the visit always involve you and Mr. Marsh engaging in sexual intercourse, [redacted] sex or other sexual activity?

Q:  Did you in fact go to Fireworks Pizza with Mr. Marsh on 10/26/16, his wedding anniversary with Andrea Marsh?

Q:  Have you ever been to the restaurant My Thai Place in Ashburn, VA?  Have you ever been to My Thai Place with Timothy Marsh?  Were you there with him on December 16, 2016?

Q:  Has Mr. Marsh ever purchased you any clothes from White House/Black Market?  Gift Card?

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Q:  Do you know the name of Susan [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Susan [redacted]?

Q:  Do you know the name of Kelly [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Kelly [redacted]?

Q:  Do you know the name of Nanette [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Nanette [redacted]?

Q:  Do you know the name of Candy [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Candy [redacted]?

Q:  Do you know the name of Seema [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Seema [redacted]?

Q:  Do you know the name of Sheila [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Sheila [redacted]?

Q:  Do you know the name of Jenny [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Jenny [redacted]?

Q:  Do you know the name of Katarina [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Katarina [redacted]?

*See* Exhibit B to Motion and Memorandum to Overrule Third Party Deponent's Fifth Amendment Assertions (containing a list of questions to Monika Pawar), attached hereto as ***Exhibit G***.

46.    Monika Pawar's attorney, Jon D. Huddleston of Sevila, Saunders, Huddleston & White, on March 16, 2018, sent a letter via email to Defendant McGarry and the Defendant Curran Law Firm stating that he has "learned that your client in conjunction with her sister and brother-in-law have [en]gaged in activity that violates the Virginia Wire Tapping Statute" which gives rise to civil causes of action and instructed them to preserve any and all recordings. *See* Letter from Jon D. Huddleston to Demian J. McGarry, Esq., Curran, Moher, Weis, dated March 16, 2018, attached hereto as ***Exhibit H***.

47.    When asked about the deposition questions during the March 30, 2018 Hearing in the underlying divorce case, Andrea Marsh pleaded the Fifth Amendment:

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**MR. WEST:   And a series of the questions which were included and listed here are questions which were based upon the information you obtained from the illegal recordings, ain't that right?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   And in terms of the individual items, which indicate that they were as a result of the recordings, can you point out for us which ones weren't as a result of the recordings?**

**ANDREA MARSH:   I plead the Fifth.**
**…**

**MR. WEST:   All right.  You … ask a question: In the last five years and since you have been unmarried, have you ever engaged in sexual intercourse with Timothy Marsh in Virginia, in Maryland, in California.  Was the cause of this question or the information for this question arrived at in part because of the recordations that took place of my client's conversations?**

**ANDREA MARSH:   No.  I wanted to know.**
**…**

**MR. WEST:   So you wanted to know because you have learned of the that he'd had sexual relations with her because of the telephone conversations; right?**

**ANDREA MARSH:   I plead the Fifth.**
**…**

**MR. WEST:  Do you see on page 3:  How many times have you [redacted] in the last five years while you, yourself, were not married?  This question is based in part on information you obtained from the illegal recordation, ain't that right?**

**ANDREA MARSH:   I plead the Fifth.**
**…**

**MR. WEST: [D]id you have a meal with Mr. Marsh at McCormick and Schmick's restaurant in Virginia?  That question was based upon information you obtained by way of the illegal recordations; isn't that right?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   All right.  Similarly, you go on to ask: If you had sex with him in the car with him afterwards?  That was also based on the recordations?**

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**ANDREA MARSH:   I plead the Fifth.**

*See* ***Exhibit B***, March 30 Transcript at 35:10-35:19, 37:2-37:19, 39:2-39:8, 41:1-41:11 (emphasis added).

48.      In the same opinion in which he held that the recordings violated the wiretapping statute, Circuit Court of Loudoun County Judge Thomas D. Horne held that Defendant Curran would have to provide a list of written interrogatories to Monika Pawar, in lieu of conducting an oral deposition.

49.      On June 6, 2018, Defendant McGarry and the Defendant Curran Law Firm issued a Notice of Deposition Upon Written Question [*sic*] to Monika Pawar that continued to include questions based on the illegal recordings.

50.      Specifically, a number of questions in the Notice of Deposition Upon Written Question [*sic*] are substantially the same questions that Defendant Curran sought to ask Monika Pawar at the oral deposition, and include the following:

Q32:   Have you ever been to Maryland Live Casino with Timothy Marsh?

Q45:  Did you have sexual relations including or excluding [redacted] sex with Mr. Marsh on 12/31/16 and/or 1/1/17?

Q49:   On the occasions that Timothy Marsh visited your residence, did the visit always involve you and Mr. marsh engaging in sexual intercourse, [redacted] sex or other sexual activity?

Q51:   Did you have sexual relations including or excluding [redacted] sex with Mr. marsh during any of your travels in the last 5 years while you yourself were unmarried?

Q52:   Have you ever been to a restaurant with Mr. Marsh?

Q53:   Which restaurants?

Q77:   Has Mr. Marsh ever purchased you any clothes from White House/Black Market or any gift card from that store?

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

\*\*\*
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

\*\*\*
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

*See ANDREA L. MARSH*, Plaintiff, v. *TIMOTHY M. MARSH*, Defendant, Case No.: 106480, June 1, 2018 Notice of Deposition Upon Written Question, attached hereto as ***Exhibit I***.

51.     Notably, ***a long list of the original deposition questions that were based on the illegal recordings were excluded*** from the Notice of Deposition Upon Written Question [*sic*].  The following ***excluded questions*** show the magnitude of the brazen illegal recordings of Plaintiff's conversations that Defendants Curran and McGarry and the Defendant Curran Law Firm used to gain tactical, financial and leverage advantages, and build the divorce case:

Q:     In the last 5 years and since you have been unmarried; have you ever performed [redacted] sex on Mr. Marsh?  In VA?  In MD?  In CA?

Q:     How many times have you performed [redacted] sex on Timothy Marsh in the last 5 years while you yourself have not been married?

Q:     In the last 5 years, when, how frequently, where?

Q:     When was the first time you performed [redacted] sex on him?

Q:     When was the last time you performed [redacted] sex on him?

Q:     Approximately how many times have you engaged in [redacted] sex with Timothy Marsh?  Over what period of time?

Q:     Within the last 5 years while you yourself have been unmarried, ever perform [redacted] sex on him in his Land Rover automobile?

Q:     Have you ever performed [redacted] sex on Mr. Marsh in his automobile in a parking garage?

Q:     Did you have sexual relations including or excluding [redacted] sex with Mr. Marsh on November 4, 2016?

Q:     Was Mr. Marsh at your residence on 11/20/16?  Did he spend approximately 3 hours at your residence on that date?  Did you have sexual relations including or excluding [redacted] sex with Mr. Marsh on November 20, 2016?

Q:     Did you have sexual relations, including or excluding [redacted] sex on 12/13/16 with Mr. Marsh?

Q:     Did you have sexual relations, including or excluding [redacted] sex on 12/27/2016 with Mr. Marsh?

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Q:      On the occasions that Timothy Marsh visited your residence, did the visit always involve you and Mr. Marsh engaging in sexual intercourse, [redacted] sex or other sexual activity?

Q:      Were you at Maryland Live Casino in July 2016?

Q:      On 12/23/16 did you have a meal with Mr. Marsh at a McCormick and Schmick's restaurant in Virginia?  You sex in the car afterwards?  He told you that he was afraid the garage had cameras?  You were wearing a sweater dress with a zipper up the side?

Q:      On 1/2/17 had a meal with Mr. Marsh at my Thai Place in Brambleton, VA?

Q:      Mr. Marsh was at your residence on 10/28/16?  Did he spend approximately 3 hours at your residence on 10/28/2016?

Q:      Did you see Mr. Marsh on 11/3/16?  Did he pick you up in Leesburg, Virginia?
        Was Mr. Marsh at your residence on 11/20/16?  Did he spend approximately 3 hours at your residence on that date?

Q:      On 11/30/16, did you have a meal with Mr. Marsh at the Lightfoot Restaurant in Leesburg, VA?

Q:      Was Mr. Marsh at your residence on 12/12/16?  Did he spend approximately 4 hours at your residence on that date?  Was he there from approximately 9:00 p.m. to 12:30 a.m. on 12/13/16?

Q:      Did you in fact go to Fireworks Pizza with Mr. Marsh on 10/26/16, his wedding anniversary with Andrea Marsh?

Q:      Have you ever been to the restaurant My Thai Place in Ashburn, VA?  Have you ever been to My Thai Place with Timothy Marsh?  Were you there with him on December 16, 2016?

Q:      Do you know the name of Susan [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Susan [redacted]?

Q:      Do you know the name of Kelly [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Kelly [redacted]?

Q:      Do you know the name of Nanette [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Nanette [redacted]?

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Q:      Do you know the name of Candy [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Candy [redacted]?

Q:      Do you know the name of Seema [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Seema [redacted]?

Q:      Do you know the name of Sheila [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Sheila [redacted]?

Q:      Do you know the name of Jenny [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Jenny [redacted]?

Q:      Do you know the name of Katarina [redacted]?  Are you aware of whether Timothy Marsh ever had sexual relations with Katarina [redacted]?

52.     The June 6, 2018 written deposition questions prepared by Defendant McGarry and the Defendant Curran Law Firm continued to include questions that were formulated with knowledge from the illegally intercepted communications in violation of the wiretapping statute, and the illegal use of this information was engaged in despite: (1) repeated warnings to Defendant Curran by Brian West, as early as April 13, 2017, that Defendant Curran's client was electronically surveilling Plaintiff and that the recordings of Plaintiff's conversations were illegal (see Paragraph 57, *infra*), (2) notice to Defendant McGarry and the Defendant Curran Law Firm by March 16, 2018 Letter from Jon Huddleston, the attorney representing Monika Pawar, that the wiretapping statute had been violated (see Paragraph 46, *supra*), (3) the March 16, 2018 e-mail from Brian West to Defendant McGarry, forwarding to him the April 13, 2017 e-mail that Brian West had sent to Defendant Curran, thereby also putting Defendant McGarry on notice of the electronic surveillance by Defendant McGarry's client (see Paragraph 58, *infra*), and (4) the March 30, 2018 ruling by the Circuit Court of Loudoun County Judge Horne that the recordings were illegal in violation of the wiretap statute (see Paragraph 33, *supra*).

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

53.     Furthermore, on May 19, 2017, Andrea Marsh, by counsel, Defendants Curran and McGarry and the Defendant Curran Law Firm, pleaded the Fifth Amendment to the following requests for admissions:

> **Request No. 1:** Admit that you clandestinely recorded one or more of [Tim Marsh's] phone calls with third parties, without [Tim Marsh's] or the third party's expressed permission, while you were not a party to said phone call.

> **Request No. 2:** Admit that you clandestinely placed a recording device in [Tim Marsh's] car to record one or more of [Tim Marsh's] phone calls with third parties, without [Tim Marsh's] or the third party's expressed permissions, while you were not a party to said phone call.

> **Request No. 3:** Admit that on January 8, 2017 you clandestinely recorded [Tim Marsh's] phone calls in his car with third parties, without [Tim Marsh's] or the third party's expressed permission, while you were not a party to said phone call.

> **Request No. 4:** Admit that you clandestinely placed a recording device in [Tim Marsh's] home office to record one or more of [Tim Marsh's] phone calls with third parties, without [Tim Marsh's] or the third party's expressed permission, while you were not a party to said phone call.

> **Request No. 5:** Admit that you clandestinely placed a recording device in the kitchen of the marital home to record one or more of [Tim Marsh's] phone calls with third parties, without [Tim Marsh's] or the third party's expressed permission, while you were not a party to said phone call.

> **Request No. 6:** Admit that you have actual knowledge that it is illegal to record a phone conversation that you are not a party to without the consent of either party.

> **Request No. 7:** Admit that you, or another person at your direction, clandestinely placed a tracking device of [Tim Marsh's] vehicle without [Tim Marsh's] approval.

*See ANDREA L. MARSH*, Plaintiff, v. *TIMOTHY M. MARSH*, Defendant, Case No.: 106480, Plaintiff's Responses to Defendant's First Request for Admissions to Plaintiff, May 19, 2017, attached hereto as ***Exhibit J***.

54.     Finally, on April 19, 2018, Andrea Marsh, by counsel, Defendant McGarry and the Defendant Curran Law Firm, submitted supplemental responses to requests for production of documents, supplementing original assertions of the attorney work-product doctrine with the Fifth Amendment privilege, for the following Requests for Production:

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**Request No. 33:** Please produce any visual or audio recordings of [Tim Marsh] or his conversations that you caused to be created or are in possession of that is stored in any form to include, but not limited to, visual or audio recordings saved on your computer, sent to you as an email attachment, or stored on your cell phone.

**Request No. 34:** Please produce any recordings or any other type of information gathered from any surveillance equipment you, or another person at your direction, placed in [Tim Marsh's] vehicle.

**Request No. 35:** Please produce any recordings or any other type of information gathered from any surveillance equipment you, or another person at your direction, placed in the marital home.

*See ANDREA L. MARSH*, Plaintiff, v. *TIMOTHY M. MARSH*, Defendant, Case No.: 106480, Plaintiff's Supplemental Responses to Defendant's Second Request for Production of Documents to Plaintiff, April 19, 2018, attached hereto as ***Exhibit K***.

55.     During the March 30, 2018 Hearing in the underlying divorce case, Andrea Marsh

continued pleading the Fifth Amendment with respect to her discovery responses in the case:

**MR. WEST:   Now, you were asked about certain recordations of your husband, were you not, in discovery?**

**ANDREA MARSH:   I plead the Fifth.**
**…**

**MR. WEST:   Okay.  And so you were asked whether you had recorded one or more of [Tim Marsh's] phone calls without [Tim Marsh's] or third party's expressed permission, which who you're not a party to said phone call?  Do you recall giving the answer that you asserted your Fifth Amendment rights?**

**ANDREA MARSH:   Ugh-huh.**

**MR. WEST:   You also … were asked to admit that you had clandestinely placed a recording device in [Tim Marsh's] car to record one or more of defendant's phone calls without [Tim Marsh's] or third party's expressed permissions while you were not a part of the phone call.  Do you recall giving the Fifth Amendment?**

**ANDREA MARSH:   Yes.  I recall.**

**MR. WEST:  All right.  … [Y]ou were asked whether on January 8th of 2017, you clandestinely recorded [Tim Marsh's] phone calls in his car with third parties without [Tim Marsh's] or third party's expressed permission.  Do you recall being asked that question and asserting the Fifth Amendment?**

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**ANDREA MARSH:   Ugh-huh.**

**MR. WEST:   All right. … [Y]ou continually asserted your Fifth Amendment rights; is that right?**

**ANDREA MARSH:   Correct.**
**...**

**MR. WEST:   Do you recall being asked the question: Admit that at your direction or with your knowledge, Legal Investigations, Inc placed a tracking device on defendant's vehicle without his permissions.  Do you recall being asked that question ...?**

**ANDREA MARSH:   I recall, yes.**

**MR. WEST:   All right.  And did you assert your Fifth Amendment rights there as well?**

**ANDREA MARSH:   Yes, I did.**

**MR. WEST:   All right.  And do you recall being asked the question:  Admit that you shared the information collected by Legal Investigations, Inc.?  Do you recall asserting your Fifth Amendment there as well?**

**ANDREA MARSH:   Yes, I did.**
**…**

**MR. WEST:   [Y]ou have certain responses to request for production of documents?**

**ANDREA MARSH:   Yes.**

**MR. WEST:   And these specifically speak to all the recordings again; is that right?**

**ANDREA MARSH:   I plead the Fifth.**

**MR. WEST:   Okay.  And, in fact, your counsel asserted that the possession of these documents were, in fact, protected by the attorney-work product doctrine; is that right?**

**ANDREA MARSH:   I plead the Fifth.**

*See **Exhibit B***, March 30 Transcript at 46:12-46:15, 47:6-48:13, 49:10-51:2 (emphasis added).

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

56.     Tim Marsh's attorney, Brian West, repeatedly warned Andrea Marsh's attorneys, Defendants Curran and McGarry, that illegal recordings of Plaintiff's conversations, and any use of such recordings by Defendants Curran and McGarry, crossed an ethical line and were illegal.

57.     These warnings to Defendant Curran began at least as early as April 13, 2017.  On April 13, 2017, Brian West sent an e-mail to Defendant Curran:  "Where is your proposed order re withdrawal?  Also Tims [*sic*] computer left apparently going to your office.  He needs it for their taxes and band business.  When can he have it back?  Also I am concerned as it appears your client has been electronically surveilling Tim.  Please ask your client to not destroy or delete any of the results of her surveillance."  *See* e-mail from Brian West to Gerry Curran, dated April 13, 2017, attached hereto as ***Exhibit L***.

58.     This email warning was later forwarded by Brian West to another attorney at the Defendant Curran Law Firm, Defendant McGarry, on March 16, 2018.  *See* e-mail from Brian West to Gerry Curran, dated April 13, 2018, forwarded to Demian J. McGarry at Defendant Curran Law Firm on March 16, 2018, attached hereto as ***Exhibit M***.

59.     In a subsequent e-mail Defendant McGarry stated the following, among other things, relating to an incriminating email from Andrea Marsh to Defendant Curran: "On the e-mail to Jerry, she can no longer find it in her sent mail folder.  In fact, she can't find any of the e-mails she sent to Jerry.  It appears that her sent mail folder has been deleted."

60.     Furthermore, on April 19, 2018, Andrea Marsh, by counsel, Defendant McGarry and the Defendant Curran Law Firm, produced the following supplemental response to requests for production of documents:

**Request No. 36:** Please produce any recordings or any other type of information gathered from any surveillance equipment or application you, or another person at your direction, installed on [Tim Marsh's] cellphone.

The Pels Law Firm LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

**Response:** Plaintiff asserts the attorney work-product doctrine to the extent that this request may require disclosure of information that is protected by the attorney-client privilege, that was prepared in anticipation of litigation, or that is his attorney work-product.

**SUPPLEMENTAL RESPONSE 04/19/18:** Without waiving previous objection, none.  Plaintiff is not in possession, custody, or control of any such recordings.

*See* **Exhibit K,** *ANDREA L. MARSH*, Plaintiff, v. *TIMOTHY M. MARSH*, Defendant, Case No.: 106480, Plaintiff's Supplemental Responses to Defendant's Second Request for Production of Documents to Plaintiff, April 19, 2018.

61.    It is a well-settled and clear violation of Virginia's Legal Ethics Rules for an attorney to utilize these illegally intercepted communications.   *See*, *e.g.*, Virginia Legal Ethics Opinion 1738 ("Attorney Participation In Electronic Recording Without Consent Of Party Being Recorded"), found electronically at https://www.vacle.org/opinions/1738.htm.

62.    The conduct violates the Rules of Professional Conduct, **RULE 8.4 Misconduct:**

It is professional misconduct for a lawyer to:

(a)    violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b)    commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer;
(c)    engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation.

63.    It also violates **RULE 5.3 Responsibilities Regarding Nonlawyer Assistants:**
With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a)    a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
(b)    a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
(c)    a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1)    the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

(2)           the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows or should have known of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

*See also* The Standing Committee on Legal Ethics of Virginia State Bar, Opinion 1448 (1992) (attorney may not advise client to make surreptitious recording of conversation for purposes of generating evidence in child abuse case.  Even if evidence would be admissible, conduct was unethical as involving fraud, deceit, and misrepresentation).

64.     Specifically, The Standing Committee on Legal Ethics of Virginia State Bar discussed the ethical ramifications of this issue:

**Prior to engaging the attorney**, the wife had tape-recorded her husband's conversations on a telephone in the marital home.  The tape recordings revealed the husband's intimate relationship with another woman.  The attorney instructed the wife to immediately cease any further recording.  While the committee did not decide whether the wife's conduct was unlawful (as this presented a legal question beyond its purview), and the issue of the attorney's involvement in the tape recording was not before the committee, the committee opined in Legal Ethics Opinion 1324 (1990):

even if non-consensual tape recording of telephone conversations is not prohibited by Virginia or federal law, a lawyer's engaging in such conduct, or assisting a client in such conduct, would be improper and violative of DR 1-102(A)(4) which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation which reflects adversely on a lawyer's fitness to practice law.  In holding that a lawyer's advising a client to non-consensually tape record telephone conversations was proscribed by DR 1-102(A)(4), the Supreme Court of Virginia recently found that "conduct may be unethical, measured by the minimum requirements of the Code of Professional Responsibility, even if it is not unlawful. . . . The surreptitious recordation of conversations authorized by Mr. Gunter ...was an 'underhand practice ' designed to 'ensnare ' an opponent." *Gunter v. Virginia State Bar*, 238 Va. 617 (1989). (See also ABA Formal Opinion No. 337 (1974)).

*See* Legal Ethics Opinion 1448 (1992) (In a later opinion, the committee concluded that even if non-consensual tape recordings are not illegal, a lawyer may not participate in such activity nor advise a client to do so.)

65.     Here, unlike in the above legal ethics opinions, a court has already found that the non-consensual tape recordings are in fact "clearly" illegal. *See Paragraph 32, supra*.

66.     As a result of Defendants' illegal, improper and unethical conduct, Plaintiff has suffered severe emotional distress, which has been ongoing for well over a year.

The Pels Law Firm LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

67.     Defendants brazenly continued intercepting Plaintiff's telephone and other communications for at least 18 months, despite repeatedly being asked to stop doing so by Plaintiff's attorney in the underlying divorce case, Brian West.  Defendants intercepted Plaintiff's communications in Plaintiff's car, in his office, and in his home to the extent that Plaintiff became increasingly anxious and distressed about his ability to have any private conversations, including but not limited to, private conversations with his attorney in the underlying divorce case, Brian West.  Plaintiff felt continuously on edge and began to seek out public places like crowded malls and streets for any and all private conversations.

68.     Through the continuous interception of Plaintiff's communications, Andrea Marsh and Defendants became aware of the most salacious and intimate details of Plaintiff's most private conversations and activities.

69.     Plaintiff's distress was compounded by the fact that Andrea Marsh and Defendants disseminated the contents of Plaintiff's very private and intimate communications, including the existence of the recordings, to multiple individuals, including, Plaintiff's co-workers, spouse of co-workers, neighbors and friends, and in particular informed the spouse of Robert Manfredi, a business associate, of the existence of recordings of Plaintiff's private communications.

70.     The dissemination of the very private and intimate information to co-workers, spouse of co-workers, neighbors and friends has caused Plaintiff to feel severely humiliated, embarrassed and distressed.

71.     Upon information and belief, Andrea Marsh and Defendants K Hampton and D Hampton also provided Defendants Curran and McGarry and the Defendant Curran Law Firm with copies of and information from the illegally intercepted communications, which allowed

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Defendants Curran and McGarry to wage a legal battle that further compounded Plaintiff's emotional distress.

72.     Plaintiff has also been forced to incur substantial additional attorneys' fees in the underlying divorce case, as well as in the case now before this Court, because of Defendants' reckless and malicious illegal actions.

73.     At the time the Defendant Lawyers were retained by Plaintiff's wife, Andrea Marsh, on or about March 2017, the Defendant Lawyers knew that Andrea Marsh through former counsel had already filed for divorce from Plaintiff on or about January 2017, and that Andrea Marsh and Plaintiff were estranged.

74.     Knowing that their client Andrea Marsh had filed for divorce from Plaintiff and further knowing that their client and Plaintiff were estranged, the Defendant Lawyers knew that Plaintiff would not be voluntarily sharing with their client details of his personal life, especially details of a sexual nature involving other persons or sex acts involving other persons, or details of Plaintiff's privileged and confidential communications with his divorce attorney.

75.     Knowing that their client Andrea Marsh had filed for divorce from Plaintiff and further knowing that their client and Plaintiff were estranged, the Defendant Lawyers knew that Plaintiff would have an expectation of privacy in his home, his home office, and in his car, and would not consent to having his private communications with others while in his home, home office or in his car being recorded, especially his attorney-client privileged communications with his divorce lawyer, or advice he received from his divorce lawyer that he may have chosen to disclose to others but certainly not to his estranged wife.

76.     The Defendant Lawyers' client Andrea Marsh and on information and belief the Non-Lawyer Defendants disclosed and/or provided to Andrea Marsh and/or the Defendant

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Lawyers the substance of private communications that Plaintiff had with others that Plaintiff intended to be private, including attorney-client privileged communications with his divorce lawyer. *E.g.*, Exhibit A (April 6, 2017 email to Curran "Re: Our Conversation This Morning"; see also Exhibits E, G, I, Q, V).

77.    The Defendant Lawyers' client Andrea Marsh and on information and belief the Non-Lawyer Defendants informed, disclosed or otherwise provided to the Defendant Lawyers sufficient information about Plaintiff's private communications with others, including Plaintiff's privileged and confidential communications with his divorce attorney, such that the Defendant Lawyers knew or should have known that the information was obtained illegally in violation of the wiretap statutes.

78.    The Defendant Lawyers' client Andrea Marsh informed, disclosed or otherwise provided to them sufficient information about Plaintiff's private communications with others, including Plaintiff's communications with his divorce attorney, such that the Defendant Lawyers were under a legal and ethical obligation and duty to determine whether the communications were illegally obtained, including pursuant to Legal Ethics Opinions of the Virginia State Bar.

79.    Upon information and belief, the Non-Lawyer Defendants informed, disclosed or otherwise provided to the Defendant Lawyers sufficient information about Plaintiff's private communications with others, including Plaintiff's privileged and confidential communications with his divorce attorney, such that the Defendant Lawyers were under a legal and ethical obligation and duty to determine whether the communications were illegally obtained, including pursuant to Legal Ethics Opinions of the Virginia State Bar.

80.    Upon information and belief, the Non-Lawyer Defendants informed, disclosed or provided    to    the    Defendant    Lawyers    sufficient    information    about    Plaintiff's    private

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

communications with others, including Plaintiff's privileged and confidential communications with his divorce attorney, such that the Defendant Lawyers knew or should have known that the communications were illegally obtained.

81.     The Defendant Lawyers stated in pleadings filed in the divorce case that they, along with their client's former counsel, together "retained and engaged the Private Investigator who prepared an Investigation Report" in the divorce case, and that the investigator's work was performed in anticipation and during the pendency of the divorce litigation under the supervision of the Defendant Lawyers or prior counsel and that therefore "any information in the possession of the private investigator is attorney work product."  See Exhibit O, Motion to Quash Subpoena *Duces Tecum* To Legal Investigations, Inc., May 16, 2017, and Memorandum in Support of Motion To Quash Subpoena *Duces Tecum* (Memorandum, p. 3 (asserting that "Wife did not retain the services of Mike Russell and/or Legal Investigations, Inc.; her current counsel and prior counsel in the divorce action retained and/or engaged and directed his services"; "information sought by the Husband is material prepared at the direction of Wife's counsels and in anticipation of litigation").

82.     Given that, as stated in the Motion to Quash, the Defendant Lawyers directed the work of the Private Investigator, the Defendant Lawyers knew that the Private Investigator was not the source of many of the the details and substance of Plaintiff's private communications with others and in particular details as to the identity of persons with knowledge of purported adultery and the identity of women who purportedly engaged in oral sex with Plaintiff, and the details used in the deposition questions for Ms. Pawar.

83.     None of the information that the client of the Defendant Lawyers relayed to them in the April 6, 2017 email (Exhibit A) is contained in the "Investigative Report, Subject: Tim

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Marsh" covering the period from November 4, 2016 through January 1, 2017 (see Exhibit P, January 4, 2017 Letter from Legal Investigations, Inc. and accompanying "Investigative Report").

84.     On May 27, 2017, in connection with the underlying divorce case, the Defendant Lawyers served on counsel for Plaintiff herein their client's "Plaintiff's Answers To Defendant's First Interrogatories To Plaintiff." See Exhibit Q, hereto.  In response to Interrogatory No. 2, the client of the Defendant Lawyers identified two women who she stated in her response "engaged in oral sex with Tim Marsh," which is sufficiently detailed of an explicit sexual nature that it did cause or should have caused the Defendant Lawyers to inquire as to how this information was known to their client.

85.     The response to Interrogatory No. 2 (Exhibit Q) identifying two women who the Defendant Lawyers' client asserted "engaged in oral sex with Tim Marsh" was of such detail as to a specific sex act with respect to specific women that the Defendant Lawyers knew or should have known that the information was illegally obtained.

86.     In the May 27, 2017 interrogatory responses, in response to Interrogatory No. 23 (Exhibit Q), the client of the Defendant Lawyers identified several women as having knowledge of Plaintiff's alleged adultery, which is a response that did cause or should have caused the Defendant Lawyers to inquire of their client as to how this information was known to her and would have revealed that the information was illegally obtained.

87.     The information that the Defendant Lawyers obtained and used in the divorce proceedings as to specific sex acts purportedly engaged in by Plaintiff with specific women, at specific places, times, including Plaintiff's car (*e.g.*, Exhibits E, G, R), was sufficiently detailed such that the Defendant Lawyers had a legal and ethical obligation and duty to inquire of their client how this detailed information was obtained.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

•••
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

•••
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

88.     In the Motion And Memorandum To Overrule Third Party Deponent's Fifth Amendment Assertions filed by the Defendant Lawyers on behalf of their client in the divorce case on June 30, 2017, the Defendant Lawyers state that their client "has significant evidence of Defendant's adultery, including time, place and opportunity evidence that implicates Ms. Pawar." See Exhibit R.  Attached to the Motion and Memorandum is the deposition questions that the Defendant Lawyers sought to ask Ms. Pawar during her June 1, 2017 deposition.  See "Exhibit B" attached to Exhibit R ("Questions For Monika Pawar").  These questions used for the June 1, 2017 deposition (Exhibit R) and some of them for the June 6, 2018 deposition (Exhibit I) of Ms. Pawar contain detailed information about places, dates, times, and specific sex acts purportedly occurring at specific dates, times and places, including dates and times and specific sex acts that are not covered by the Investigative Report, such that this information could only have been obtained by non-consensual illegal interceptions.

89.     The questions used for the June 1, 2017 and June 6, 2018 depositions of Ms. Pawar contained such detailed information about places, dates, times, and specific sex acts purportedly occurring at specific dates, times and places, including dates and times that are not covered by the Investigative Report, that the Defendant Lawyers knew or should have known that this information was obtained by non-consensual illegal interceptions.

90.     The questions used for the June 1, 2017 and June 6, 2018 depositions of Ms. Pawar contain such detailed information about places, dates, times, and specific sex acts purportedly occurring at specific dates, times and places, including dates and times that are not covered by the Investigative Report, that the Defendant Lawyers had a legal and ethical obligation and duty to inquire of their client how this detailed information was obtained, including under the Legal Ethics Opinions of the Virginia Bar.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

91.     The questions used for the June 1, 2017 and June 6, 2018 depositions of Ms. Pawar contain such detailed information about places, dates, times, and specific sex acts purportedly occurring at specific dates, times and places, including dates and times that are not covered by the Investigative Report, such that on information and belief this did cause the Defendant Lawyers to inquire of their client as to how this information was obtained, which revealed that it was obtained illegally.

92.     The "Andrea Marsh Journal of Tim's Activities" (Exhibit E) contained such detailed information about private communications of Plaintiff and others, including places, dates, times, persons and specific sex acts purportedly occurring at specific dates, times and places with specific persons, including dates and times that are not covered by the Investigative Report, and also including privileged and confidential communications between Plaintiff and his divorce lawyer, that the Defendant Lawyers knew or should have known that this information was obtained by non-consensual illegal interceptions.

93.     The questions used in connection with Ms. Pawar's June 6, 2018 deposition (Exhibit I) continued to use information that could have only come from non-consensual illegal interceptions of Plaintiff's private communications, and the Defendant Lawyers continued to use this information that was illegally obtained even after Judge Horne ruled on March 30, 2018 that the recordings of Plaintiff's private communications violated the wiretap statute, which provided the Defendant Lawyers with clear actual knowledge of the illegality of the recordings of Plaintiff's private communications with others, the substance of which the Defendant Lawyers continued to use.

94.     The Defendant Lawyers' client Andrea Marsh intentionally obtained recordings of Plaintiff's private communications between himself and others in order to seek to use some or all

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

of the information contained in them to gain an unfair financial and tactical advantage in the underlying divorce, and to seek to leverage and extort Plaintiff into agreeing to an inequitable property settlement.

95.     The Defendant Lawyers knowingly used information illegally obtained from Plaintiff's private communications between himself and others to seek to gain an unfair financial and tactical advantage in the underlying divorce, and to seek to leverage and extort Plaintiff into agreeing to an inequitable property settlement.

96.     The information contained in the email that the Defendant Lawyers' client Andrea Marsh sent to Defendant Lawyer Curran on April 6, 2017 (see Exhibit A, attached hereto), provided the Defendant Lawyers with factual circumstances from which they knew or should have known that the recordings were non-consensual and illegally obtained in violation of the wiretap statutes.

97.     The information contained in the March 6, 2018 Motion to Quash the noticed March 13, 2018 deposition of Monika Pawar in the divorce proceeding (see Exhibit S, attached hereto), provided the Defendant Lawyers with factual circumstances from which they knew or should have known that the recordings were non-consensual and illegally obtained in violation of the wiretap statutes.

98.     The information contained in the March 8, 2018 Motion *In Limine* to preclude use of the Investigative Report in the divorce proceeding as derivative of illegal recordings (see Exhibit T, attached hereto), provided the Defendant Lawyers with factual circumstances from which they knew or should have known that the recordings were non-consensual and illegally obtained in violation of the wiretap statutes.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

- 39 -

99.     The information contained in the March 18, 2018 Trial Memorandum prepared by Plaintiff's divorce attorney, Brian West, and served on the Defendant Lawyers in the divorce proceeding (see Exhibit U, attached hereto), provided the Defendant Lawyers with factual circumstances from which they knew or should have known that the recordings were non-consensual and illegally obtained in violation of the wiretap statutes.

100.    The response to Interrogatory No 2 in the April 27, 2017 "Plaintiff's Answers to Defendant's First Interrogatories to Plaintiff" prepared by the Defendant Lawyers in the divorce proceeding (see Exhibit Q, attached hereto) concerning persons purportedly having knowledge of facts and events relevant to the divorce proceeding and referencing two women who it is asserted "engaged in oral sex with Tim Marsh," provided the Defendant Lawyers with factual circumstances from which they knew or should have known that the recordings were non-consensual and illegally obtained in violation of the wiretap statutes.

101.    The response to Interrogatory No. 2 in the April 27, 2017 "Plaintiff's Answers to Defendant's First Interrogatories to Plaintiff" prepared by the Defendant Lawyers in the divorce proceeding (see Exhibit Q, attached hereto) concerning persons purportedly having knowledge of facts and events relevant to the divorce proceeding and identifying two women who it is asserted "engaged in oral sex with Tim Marsh" and identifying four women who it is asserted "met and communicated with" Tim Marsh but "I am unsure at this time if any sexual acts occurred between them and Tim" provided the Defendant Lawyers with factual circumstances from which they knew or should have known that the recordings were non-consensual and illegally obtained in violation of the wiretap statutes.

102.    The information contained in the the April 27, 2017 "Plaintiff's Answers to Defendant's First Interrogatories to Plaintiff" prepared by the Defendant Lawyers in the divorce

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

proceeding (see Exhibit Q, attached hereto), and in particular the response to Interrogatory No. 23 concerning persons purportedly having knowledge that supports their client's allegation that the Plaintiff herein committed adultery identifying eight women provided the Defendant Lawyers with factual circumstances from which they knew or should have known that the recordings were non-consensual and illegally obtained in violation of the wiretap statutes.

103.    The information contained in the April 19, 2018 "Plaintiff's Fourth Supplemental Answers to Defendant's First Interrogatories to Plaintiff" prepared by the Defendant Lawyers in the divorce proceeding (see Exhibit V, attached hereto), and in particular the response to Interrogatory No. 23 concerning persons purportedly having knowledge that supports their client's allegation that the Plaintiff herein committed adultery referencing "Band Members: Rob Manfredi, Joe Amato and Max Koteen" provided the Defendant Lawyers with factual circumstances from which they knew or should have known that the recordings were non-consensual and illegally obtained in violation of the wiretap statutes.

104.    Based on the interrogatory responses of their client, the responses of their client to discovery asserting the Fifth Amendment privilege and the work-product doctrine, the specific questions that the Defendant Lawyers used in connection with the deposition of Ms. Pawar, the motion *in limine* and motions to quash and Trial Memorandum and other pleadings filed in the underlying divorce case, and the email exchanges, the Defendant Lawyers knew all of the pertinent factual circumstances surrounding the recordings necessary to know that they were non-consensual and illegally obtained in violation of the wiretap statutes.

105.    Regardless of whether the Defendant Lawyers ever themselves listened to the recordings, or were ever told everything of what was on the recordings, or even knew who all of the parties to the conversations were, the nature and details of the information that the Defendant

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Lawyers were informed of and that had been disclosed and/or otherwise provided to them and that they and their client then used in the divorce proceeding was sufficient such that the Defendant Lawyers knew or should have known that the information was non-consensual and illegally obtained.

106.

## COUNT I

### VIOLATION OF FEDERAL WIRETAPPING LAWS, 18 U.S.C. §§ 2510 *et seq.*
### Against All Defendants

107.    Plaintiff repeats and realleges all of the preceding Paragraphs of this Complaint as though fully set forth herein.

108.    18 U.S.C. § 2511 provides:

(1) Except as otherwise specifically provided in this chapter any person who—
(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication …
(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication in violation of this subsection … Shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection 5.

109.    18 U.S.C. § 2510 defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

110.    18 U.S.C. § 2510 defines "wire communication" as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception … furnished or operated by any person engaged in providing or operating such facilities for the

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

transmission of interstate or foreign communications or communications affecting interstate or foreign commerce."

111.   18 U.S.C. § 2510 defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce...."

112.   "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

113.   18 U.S.C. § 2520, Recovery of Civil Damages Authorized, provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

114.   Plaintiff's telephone and other intercepted communications constitute oral, wire, and/or electronic communications under 18 U.S.C. §§ 2510 *et seq.*

115.   Defendants' conduct violated 18 U.S.C. §§ 2510 *et seq.* because they intentionally intercepted, endeavored to intercept, and/or disclosed and used Plaintiff's oral, wire, and/or electronic communications.  The intercepted communications included, among others, privileged and confidential communications between Plaintiff and his attorney.

116.   Defendants intentionally obtained, intercepted, and/or used Plaintiff's oral, wire, and/or electronic communications, without Plaintiff's knowledge, consent or authorization.

117.   Plaintiff suffered harm as a result of Defendants' violations of 18 U.S.C. §§ 2510 *et seq.*, and therefore seeks: (a) preliminary, equitable and declaratory relief as may be appropriate;

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

(b) the sum of the actual damages suffered and the profits obtained by Defendants as a result of their unlawful conduct, or statutory damages as authorized by 18 U.S.C. §§ 2510 *et seq.*, whichever is greater; (c) punitive damages; and (d) reasonable costs and attorneys' fees.

## COUNT II

### VIOLATION OF VIRGINIA WIRETAPPING LAWS, Va. Code. §§ 19.2-61 *et seq.*
### Against All Defendants

118.    Plaintiff repeats and re-alleges all of the preceding Paragraphs of this Complaint as though fully set forth herein.

119.    Va. Code §19.2-62 provides:

A. Except as otherwise specifically provided in this chapter any person who:
1. Intentionally intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept, any wire, electronic or oral communication;
2. Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical or other device to intercept any oral communication;
3. Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, electronic or oral communication knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or
4. Intentionally uses, or endeavors to use, the contents of any wire, electronic or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; shall be guilty of a Class 6 felony.

120.    Va. Code §19.2-69 further provides:

Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall (i) have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose or use such communications, and (ii) be entitled to recover from any such person:
1. Actual damages but not less than liquidated damages computed at the rate of $400 a day for each day of violation or $4,000, whichever is higher, provided that liquidated damages shall be computed at the rate of $800 a day for each day of violation or $8,000, whichever is higher, if the wire, electronic, or oral communication intercepted, disclosed, or used is between (i) a husband and wife; (ii) an attorney and client …;
2. Punitive damages; and

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

\*\*\*

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

\*\*\*

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

3. A reasonable attorney's fee and other litigation costs reasonably incurred.

121.    Defendants' conduct violated Va. Code §19.2-61 *et seq.* because they intentionally intercepted, endeavored to intercept, and/or disclosed and used Plaintiff's oral, wire, and/or electronic communications.

122.    Defendants intentionally obtained, intercepted, and/or used Plaintiff's oral, wire, and/or electronic communications, without Plaintiff's knowledge, consent or authorization.

123.    The intercepted communications included, among others, privileged and confidential communications between Plaintiff and his attorney.

124.    Plaintiff suffered harm as a result of Defendants' violations of Va. Code §19.2-61 *et seq.*, and therefore seeks: (a) preliminary, equitable and declaratory relief as may be appropriate; (b) the sum of the actual damages suffered and the profits obtained by Defendants as a result of their unlawful conduct, or statutory damages as authorized by Va. Code §19.2-61 *et seq.*, whichever is greater; (c) punitive damages; and (d) reasonable costs and attorneys' fees.

## COUNT III

### VIOLATION OF VIRGINIA COMPUTER CRIMES ACT, VA. CODE 18.2-152.5, COMPUTER INVASION OF PRIVACY
### Against Defendants Kristina Hampton and Derek Hampton

125.    Plaintiff repeats and re-alleges all of the preceding Paragraphs of this Complaint as though fully set forth herein.

126.    Va. Code 18.2-152.5, Computer Invasion of Privacy provides:

A person is guilty of the crime of computer invasion of privacy when he uses a computer or computer network and intentionally examines without authority any employment, salary, credit or any other financial or identifying information … relating to any other person. "Examination" under this section requires the offender to review the information relating to any other person after the time at which the offender knows or should know that he is without authority to view the information displayed.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

127.    On information and belief, Defendants K Hampton and D Hampton used a computer or computer network to intentionally examine Plaintiff's private financial information.

128.    Specifically, Defendants K Hampton and D Hampton used a computer or computer network to intentionally examine Plaintiff's Fidelity 401K individual retirement account, personal credit card statements and banking accounts.

129.    Defendants K Hampton and D Hampton were not authorized by Plaintiff to view his  private financial information.

130.    By intentionally examining Plaintiff's private financial information, which Defendants were not authorized to view and examine, Defendants K Hampton and D Hampton violated Virginia Computer Invasion of Privacy, Va. Code 18.2-152.5.

131.    Virginia Code 18.2-152.12, Civil Relief; Damages, provides:  "Any person whose property or person is injured by reason of a violation of any provision of this article … may sue therefor and recover for any damages sustained and the costs of suit."

132.    Plaintiff suffered harm as a result of the violation by Defendants K Hampton and D Hampton of the Va. Code 18.2-152.5, Computer Invasion of Privacy, and therefore seeks: (a) preliminary, equitable and declaratory relief as may be appropriate; (b) the sum of the actual damages suffered and the profits obtained by Defendants as a result of their unlawful conduct; (c) statutory damages as authorized by Va. Code §18.2-152.5; (d) punitive damages; and (e) reasonable costs and attorneys' fees.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

## COUNT IV

### VIOLATION OF VIRGINIA COMPUTER CRIMES ACT, VA. CODE 18.2-152.4. COMPUTER TRESPASS
### Against Defendants Kristina Hampton and Derek Hampton

133.     Plaintiff repeats and re-alleges all of the preceding Paragraphs of this Complaint as though fully set forth herein.

134.     Va. Code 18.2-152.4, Computer Trespass provides:

A.       It shall be unlawful for any person, with malicious intent, to:

. . .

6.       Use a computer or computer network to make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs or computer software residing in, communicated by, or produced by a computer or computer network

. . .

8.       Install or cause to be installed, or collect information through, computer software that records all or a majority of the keystrokes made on the computer of another without the computer owner's authorization.

135.     On information and belief, Defendants K Hampton and D Hampton intentionally used Plaintiff's computer or computer network to make or cause to be made an unauthorized copy of computer data residing in, communicated by, or produced by Plaintiff's computer or computer network.

136.     In intentionally using Plaintiff's computer or computer network to make or cause to be made an unauthorized copy of computer data residing in, communicated by, or produced by Plaintiff's computer or computer network, Defendants K Hampton and D Hampton acted with malicious intent.

137.     On information and belief, Defendants K Hampton and D Hampton intentionally installed or caused to be installed on the computer of Plaintiff, computer software that records all or a majority of all keystrokes made on Plaintiff's computer without Plaintiff's authorization.

138.     Defendants K Hampton and D Hampton acted with malicious intent in intentionally installing or causing to be installed on the computer of Plaintiff, computer software that records all or a majority of all keystrokes made on Plaintiff's computer without Plaintiff's authorization.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

139.    By acting with malicious intent in intentionally installing or causing to be installed on the computer of Plaintiff, computer software that records all or a majority of all keystrokes made on Plaintiff's computer without Plaintiff's authorization, Defendants K Hampton and D Hampton violated Virginia Computer Trespass, Va. Code 18.2-152.4.

140.    Virginia Code 18.2-152.12, Civil Relief; Damages, provides:  "Any person whose property or person is injured by reason of a violation of any provision of this article … may sue therefor and recover for any damages sustained and the costs of suit."

141.    Plaintiff suffered harm as a result of the violation by Defendants K Hampton and D Hampton of  Va. Code 18.2-152.4, Computer Trespass, and therefore seeks: (a) preliminary, equitable and declaratory relief as may be appropriate; (b) the sum of the actual damages suffered and the profits obtained by Defendants as a result of their unlawful conduct; (c) statutory damages as authorized by Va. Code §18.2-152.4; (d) punitive damages; and (e) reasonable costs and attorneys' fees.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against All Defendants

142.    Plaintiff repeats and re-alleges all of the preceding Paragraphs of this Complaint as though fully set forth herein.

143.    Defendants, by and through: (i) illegal interceptions of Plaintiff's telephone and other communications for at least 18 months; (ii) dissemination of Plaintiff's private and intimate conversations to third parties; and (iii) use of the illegally intercepted communications in the underlying divorce case, behaved intentionally and/or recklessly.

144.    Defendants, by and through: (i) illegal interceptions of Plaintiff's telephone and other communications for at least 18 months; (ii) dissemination of Plaintiff's private and intimate

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

conversations to third parties; and (iii) use of the illegally intercepted communications in the underlying divorce case, intended to cause emotional distress to Plaintiff by using his private communications to embarrass and humiliate him, and to gain tactical, financial and leverage advantages in the underlying divorce case.

145.    The (i) illegal interceptions of Plaintiff's telephone and other communications for at least 18 months; (ii) dissemination of Plaintiff's private and intimate conversations to third parties; and (iii) use of the illegally intercepted communications in the underlying divorce case by Defendants was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

146.    The outrageousness of this conduct, and further demonstrating that the conduct is so extreme as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, are the additional facts that (i) Defendants were put on notice of the illegality of their actions, and (ii) in the case of Defendants Curran and McGarry, they were also put on notice of the violations of their ethical obligations, and (iii) all Defendants were demanded to cease and desist, and (iv) all Defendants continued to act illegally and unethically in the face of the Court ruling of Judge Horne that the communications were in fact violations of the wiretapping statute.  All Defendants continued their illegal interceptions and continued their illegal and improper use of the illegally intercepted  communications in the divorce action despite the notices and demands to stop such illegal and unethical actions.

147.    Plaintiff suffered and continues to suffer severe and extreme emotional distress and emotional injury.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

148.     Plaintiff suffered and continues to suffer mental anguish as a result of Defendants'

illegal interceptions and dissemination of Plaintiff's telephone and other communication, and the

continuing illegal interceptions and disseminations despite the ruling of Judge Horne and despite

the repeated demands to cease and desist these illegal activities.  Said mental anguish is of a nature

that no reasonable person could be expected to endure.

149.     Defendants' aforementioned actions were the direct and proximate cause of such

severe emotional distress and emotional injury to Plaintiff.

**COUNT VI**

**AIDING AND ABETTING**
**Against All Defendants**

150.     Plaintiff repeats and re-alleges all of the preceding Paragraphs of this Complaint as

though fully set forth herein.

151.     Plaintiff asserts that all Defendants had knowledge of the facts and circumstances

surrounding some or all of the illegally intercepted communications and their use as set forth

herein, such that they had actual knowledge that the conduct of each of the Defendants was

unlawful.

152.     All Defendants knowingly gave substantial assistance or encouragement to each

other in carrying out the unlawful interception and use of the illegally intercepted communications.

153.     The unlawful interception and use of the illegally intercepted communications has

harmed Plaintiff by violating his attorney-client privilege, gaining improper tactical, financial and

leverage advantages in the divorce case by the improper and unlawful use of illegally intercepted

communications, by causing Plaintiff to suffer severe emotional distress and financial harm.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

154.    Plaintiff has been and continues to be damaged as a proximate result of the improper and unlawful interception and use of the illegally intercepted communications and other illegal acts alleged herein.

## COUNT VII

### TEMPORARY AND PERMANENT INJUNCTIVE RELIEF
### Pursuant to 18 U.S.C. § 2520(b)
### Against All Defendants

155.    Plaintiff incorporates all of the preceding Paragraphs as though fully set forth herein.

156.    As direct and proximate result of Defendants' illegal conduct as described herein, Plaintiff has suffered irreparable harm through the loss of his confidential and private and attorney-client privileged electronic and other communications. Given that aspects of the divorce action are still ongoing between Plaintiff and Andrea Marsh -- whose attorneys in the divorce action are Defendants Curran and McGarry and the Defendant Curran Law Firm, and Andrea Marsh's sisters and brother-in-law are Defendants K Hampton, D Richards and D Hampton -- the misappropriation, possession and continued use and disclosure by Defendants herein of the private, confidential and attorney-client privileged information gained in violation of state and federal law poses a substantial risk of irreparable harm to Plaintiff. The total loss to Plaintiff in economic terms cannot be accurately measured at this time.

157.    Plaintiff has a substantial likelihood of success on the merits of his claims. In addition, the magnitude of the injury being suffered due to Defendants' unlawful conduct heavily outweighs whatever hardship Defendants could allege or prove from being restrained as requested.

158.    The granting of the injunctive relief requested herein will not adversely affect any public policy or public interest.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

159.    Injunctive relief, as an equitable remedy, is authorized by 18 U.S.C. § 2520(b), and as such Plaintiff need not demonstrate an irreparable injury or inadequacy of other remedies, but merely show a prima facie case of illegality and that an injunction would fulfill the legislative purpose of the statute. A temporary restraining order and preliminary injunction will fulfill the purposes of these statutes.

160.    At this point, Plaintiff has no adequate remedy at law and is suffering immediate, imminent, and irreparable harm. Should Defendants' actions in using and disclosing the communications and information illegally obtained continue unabated, they will continue to harm Plaintiff's ability to proceed in the underlying divorce as well as impact his privacy interests and his right to the confidentiality of his attorney-client privileged communications.

161.    Further, a substantial risk exists that in the absence of an appropriate Order directing Defendants to preserve material evidence, Defendants will destroy or conceal evidence supporting the claims contained in this Complaint.  Specific items at risk of spoliation include, but are not limited to: digital storage devices; computer hard drives; files stored on-line; stored e-mails; stored audio-files; downloaded e-mails and any attachments thereto; correspondence or memoranda summarizing the contents of Plaintiff's e-mails and audio-files. Given that much of the evidence at issue is likely to be in digital format, the risk of loss through inadvertence, accident, or deliberate action is heightened. In the event that such evidence is lost, mishandled or destroyed, Plaintiff's ability to establish his claims and damages will be threatened with irreparable harm.

162.    Issuance of a temporary restraining order requiring Defendants to preserve all material evidence in their care, custody or control would aid in fulfilling the remedial purposes articulated in 18 U.S.C. § 2520.

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

163.   As to the requirement of a bond, the Court should set a minimum bond amount of no more than $100.00 on the grounds that the relief being sought will not cause damage to Defendants in that Defendants have no legal right to possess, disclose or use Plaintiff's private and confidential and confidential attorney-client privileged electronic communications, audiofiles or materials derived therefrom.

164.   Accordingly, Plaintiff requests a temporary restraining order and temporary injunction against Defendants, their agents, servants, employees and those persons in active concert or participation with them, from:

a.   Deleting, altering, destroying or removing any e-mails or electronic communications directly or indirectly originating from Plaintiff's e-mail accounts;

b.   Deleting, altering, destroying or removing any hard copy of any e-mails or electronic communications or attachments thereto which directly or indirectly originated from Plaintiff's e-mail accounts;

c.   Deleting, altering, destroying or removing any audiofiles or any writings in any form which reflect the contents of any audiofiles which directly or indirectly originated from any Defendants' actions or the actions of those working in concert with or at the direction of Defendants and/or Andrea Marsh;

d.   Deleting, altering, destroying or removing any hard copies of any audiofiles or any writings in any form which reflect the contents of any audiofiles which directly or indirectly originated from any Defendants' actions or the actions of those working in concert with or at the direction of Defendants and/or Andrea Marsh; and

e.   Directly or indirectly using or disclosing any information contained within any of Plaintiff's electronic communications or documents attached to any such electronic

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

communications or audiofiles or documents reflecting the contents of such audiofiles that Defendants may have received or obtained.

165.    Plaintiff further requests that the Court enter Temporary Restraining Orders requiring:

a.      Defendants to preserve any and all evidence of any disclosure or dissemination of Plaintiff's electronic communications or any information contained therein and audiofiles;

b.      Defendants to preserve any and all portable or fixed electronic storage devices, including but not limited to, hard drives, floppy disks, on-line storage, thumb or zip drives, compact disks or flash drives, containing e-mails or electronic communications directly or indirectly originating from Plaintiff's e-mail accounts, or any summaries of information derived from Plaintiff's e-mails or electronic communications which may contain evidence of any disclosure or dissemination of Plaintiff's electronic communications or any information contained therein, and audiofiles;

166.    That pending further order of this Court, all items and materials covered by this Order shall be preserved in such a manner as to maintain the integrity of the data, including all associated meta-data existing as of the date of this Order;

167.    The Temporary Restraining Order, as requested above, is warranted in that it is necessary to preserve the status quo.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests a judgment in his favor and against Defendants as follows:

A.      Compensatory damages in the amount of two million dollars ($2,000,000);

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

B.      Statutory damages pursuant to 18 U.S.C. § 2520(c), VA Code § 19.2-69 and Va. Code § 18.2-152.12;

C.      Punitive damages pursuant to 18 U.S.C. §2520(b), VA Code § 19.2-69(ii)(2) and the common law;

D.      Attorney's fees and costs pursuant to 18 U.S.C. §2520(b), VA Code § 19.2-69(ii)(3) and Va. Code § 18.2-152.12;

E.      A temporary and permanent Order, pursuant to 18 U.S.C. § 2520(b) directing Defendants to return to Plaintiff all copies of all electronic communications, whether stored in an electronic format or printed;

F.      A temporary and permanent Order, pursuant to 18 U.S.C. § 2520(b) barring Defendants from disclosing the contents of any electronic communications obtained in violation of federal law.

G.      A temporary and permanent Order, pursuant to 18 U.S.C. § 2520(b) directing Defendants to cease and desist from engaging in any electronic monitoring, surveillance or wiretapping of Plaintiff;

H.      A temporary restraining Order issue pursuant to 18 U.S.C. §2520(b) ordering the Defendants to preserve all documentary and physical evidence in their care, custody or control, including all electronic devices that may contain any evidence of Plaintiff's electronic communications;

I.      Equitable relief; and

J.      Such further and additional relief as this Court may find to be just and equitable.

## **JURY DEMAND**

The Pels Law Firm LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***
8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***
(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

Plaintiff hereby demands a trial by jury for all claims so triable.

Respectfully submitted,

**THE PELS LAW FIRM**

Dated: <u>August 16, 2018</u>

<u>*/s/ Jon D. Pels*</u>
Jon D. Pels, Esq. (VA Bar No. 39888)
jpels@pelslaw.com

4845Rugby Avenue,
Third Floor
Bethesda, MD 20814
(301) 986-5570 (T)
(301) 986-5571 (F)
*Counsel for Plaintiff*

THE PELS LAW FIRM LLC

4845 Rugby Ave
3ʳᵈ Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on August 16, 2018, I caused a true and correct copy of the foregoing First Amended Complaint to be served via the Court's ECF system on all registered participants, including:

| | |
|---|---|
| John E. McIntosh, Jr., Esq. | Bernard J. DiMuro, Esq. |
| David D. Hudgins, Esq. | M. Jarrad Wright, Esq. |
| HUDGINS LAW FIRM, P.C. | Jayna Genti, Esq. |
| 515 King Street, Suite 400 | DiMuro Ginsburg, PC |
| Alexandria, Virginia 22314 | 1101 King Street, Suite 610 |
| *Counsel for Gerald Curran, Demian J.* | Alexandria, Virginia 22314 |
| *McGarry, and the Law Office of Curran,* | *Counsel for Defendants Kristina* |
| *Moher, Weis, P.C.* | *Hampton, Derek Hampton, and Danielle* |
| | *Richards* |

                                                          */s/ Jon D. Pels*
                                                           Jon D. Pels, Esq. (VA Bar No. 39888)

THE PELS LAW FIRM LLC

4845 Rugby Ave
3rd Floor
Bethesda, MD 2014

***

8500 Leesburg Pike
Suite 400
Vienna, VA 22010

***

(T) 301-986-5570
(F) 301-986-5571

www.pelslaw.com
jpels@pelslaw.com