**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **TIMOTHY MARSH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:18-cv-00787-LO-IDD** |
| ) | |
| **GERALD CURRAN, ESQ., et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
LAWYERS'  MOTION TO DISMISS/MOTION TO STRIKE**

COMES NOW Defendants Gerald Curran, Demian J. McGarry and The Law Office Of

Curran, Moher, Weis, P.C., (hereinafter "Defendant Lawyers") , by counsel, and respectfully

submit this Memorandum of Points and Authorities in support of their Motion to Dismiss/

Motion to Strike Plaintiff's Complaint herein , and state as follows:

**INTRODUCTION**

Plaintiff Timothy Marsh brings this Complaint against his former wife's sisters and brother -

in-law (Defendant Family) alleging that they, together with his former wife, recorded his

conversations with various paramours and other individuals without his consent, and used a

computer to examine his private financial information and make unauthorized copies of his

private communication, all in violation of federal and state wiretapping laws and  state computer

crimes laws,  in a successful attempt to develop evidence of his serial adultery, in order to assist

his former wife in proving her allegations of adultery in their pending divorce proceeding. Plaintiff also alleges all Defendants actions in obtaining and disclosing evidence of his serial adultery has caused him severe emotional distress and that they aided and abetted each other in doing so.

In addition, Plaintiff Marsh brings claims against his former wife's current attorneys and their law firm  (Defendant Lawyers) alleging that they used the evidence of his serial adultery, allegedly recorded by his former wife and Defendant Family members prior to their being retained, in connection with their representation of her in her divorce proceeding, in violation both federal (18 U.S.C. § 2510 et seq.) and state (Va. Code §19.2-61 et seq.) wiretapping laws, and in violation of the Virginia Rules of Professional Conduct, and that their use of said contents has caused him severe emotional distress and otherwise damaged him.

All of Plaintiff's claims against the Defendant Lawyers should be dismissed because, 1) their alleged "use" of this evidence under the facts plead is absolutely privileged under the law; 2)  alleged violations of the Virginia Rules of Professional Conduct do not form the basis for a private civil cause of action, and thus are irrelevant and immaterial, 3)  the law does not permit Plaintiff to recover damages which, according to his own allegations, grow out of his own illegal and immoral conduct, 4) Plaintiff fails to allege facts which, if true, meet the very high bar for stating a claim for intentional infliction of severe emotional distress under Virginia Law, and; 5) Plaintiff has failed to allege fact which, if true, would state a claim under 18 U.S.C. §2511 (1)(d).

## STATEMENT OF FACTS/ALLEGATIONS

Plaintiff makes the following factual allegations in his Complaint relative to Defendant Lawyer's Motion to Dismiss.

In October 2016 Plaintiff's wife Andrea and her Defendant Family members began illegally recording his conversations. (¶ #2). Plaintiff contends they placed recording devices in his home, car and on his cell phone. (¶ #20). In January 2017 Andrea filed suit for a divorce from Plaintiff in Loudoun County, Virginia, alleging adultery as a fault ground (¶ #17). Andrea was represented at the time by other counsel who, Plaintiff alleges, had knowledge of the illegal recordings, including recordings of Plaintiffs' conversations with his lawyer. (¶ # 22). That lawyer withdrew from the case on March 27, 2017. (¶ #22).

Andrea subsequently retained the Defendant Lawyers and Plaintiff alleges Andrea and her Defendant Family members then "shared" the intercepted "communications" with them. (¶ # 23, 24). There is no allegation regarding the form in which these "communications" were shared although there is an allegation concerning one or more e-mails (not recorded conversations) one of the Defendant Family members sent Mr. Curran. (¶ #24).

Plaintiff alleges that in April 2017 he "discovered" two recordings of conversations he had with Monika Pawar (one of his paramours) on a home computer he shared with his wife (¶ #30,31) and that on March 30, 2018 Judge Thomas Horne ruled that they violated the Virginia Wiretap Statute after his lawyer put them in evidence.(¶ # 33) Judge Horne made no ruling with respect to who violated the statute.

Plaintiff alleges that, on information and belief, the Defendant Family members transcribed his intercepted conversations and provided said transcriptions to Andrea and the Defendant Lawyers. There is no allegation concerning whether what was allegedly provided to the Defendant Lawyers contained any reference to their allegedly illegal origin.

Plaintiff alleges that Andrea hired a Private Detective to follow him in November and December 2016 and that she and her Defendant Family members continued their illegal recording during that time (¶ # 40 and 42). Plaintiff alleges that the Private Detective completed his work on January 1, 2017 and rendered his report. (¶ #42,43). All of this occurred well before the Defendant Lawyers were retained. Of course, once the Defendant Lawyers were retained they were provided with a copy of the Detective's report and in turn provided it to Plaintiff's counsel. (¶ # 43).

Without any factual support whatsoever, Plaintiff next alleges that the Defendant Lawyers "used" the contents of his illegally intercepted conversations in connection with Ms. Pawar's deposition. (¶ #44). Plaintiff makes no allegation concerning the form or manner in which the contents of any recordings was used or that these Defendants had reason to know what they were provided was illegally obtained at that time.

Plaintiff alleges that on June 1, 2018 that the Defendant Lawyers propounded Written Questions upon Ms. Pawar, some of which were based on illegal recordings of his conversations. (¶ #49). Plaintiff goes on to allege that at least some of the questions, "were formulated with knowledge from" the illegally intercepted communications. (¶ #52). Again, there is no allegation that the Defendant Lawyers actually possessed recordings they knew to be illegal obtained or that anything their client or her Detective had provided them were created from an illegal source.

Finally, Plaintiff alleges that he has suffered emotional distress as a result of all of the Defendants actions in recording his private communications over 18 months and their becoming aware of the most salacious and intimate details of his private conversation and activities, thus conceding his adulterous behavior. (¶ # 66, 68).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d, 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Com. v. Twombly*, 550 U.S. 544, 556 (2007)).

## POINTS OF LAW AND AUTHORITIES

1) Attorney's Use Of Illegally Taped Conversations In A Judicial Proceeding Is Privileged.

In a case involving allegations of violations of the federal wiretapping statutes and the Illinois Eavesdropping statute, the Seventh Circuit Court of Appeals stated that " the same policy concerns that animate the common law rule prohibiting defamation actions for statements made in relation to a judicial proceeding ought to apply to actions brought under the Illinois Eavesdropping Statute against attorneys who use or disclose information in a manner intimately

associated with an ongoing judicial proceeding." *Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994). The "concerns that animate the common law rule" are concerns about the "truth-seeking process of a judicial proceeding." *Id*. The court went on to state that the truth-seeking process "will be most securely advanced if attorneys do not fear civil or criminal liability as the consequence of misjudging the legality of disclosing particular information." *Id*. Likewise, an Indiana state court held that an attorney's use of illegally taped recordings in a judicial proceeding was privileged. *Hamed v. Pfeifer*, 647 N. E. 2d 669 (Ind. Ct. of App. 1995).

In 1998 the Fourth Circuit decided the analogous case of *Culbertson v. Culbertson*, 143 F. 3d 825 (4th Cir. 1998), in which they held that a husband's divorce lawyer was not liable under the federal wiretapping statute for using illegally obtained recordings of telephone conversations in court for purposes of impeaching the wife's testimony. The court noted that both the Fifth and Ninth Circuits had approved of an attorney's use illegally taped telephone conversations for impeachment purposes. Accordingly, while not exonerating the attorney defendant on grounds of privilege, the Fourth Circuit has approved of an attorney's use of illegally obtained wiretapped evidence in judicial proceedings in appropriate circumstances.

The same policy concerns underlying the *Scheib* court's comments are present in this matter. In addition to those concerns, other issues arise when attorneys are compelled to defend themselves for allegedly wrongful actions taken in connection with their representation of individuals in a judicial proceeding. For example, should the Defendant Lawyers in this matter be compelled to defend themselves in this action, they will be unable to do so without disclosing their client's confidences and secrets in clear violation of her attorney/client privilege. Doing so could expose their client to the same civil and/or criminal liability her family members are now

being exposed to. Accordingly, there are strong public policy reasons for holding the Defendant Lawyers immune from liability for actions taken on behalf of a client in a judicial proceeding.

2) <u>Plaintiff Cannot Recover Damages That Arise Out Of His Own Illegal And Immoral Conduct</u>.

Consent or participation in an immoral or unlawful act by a plaintiff precludes him from recovering for injuries sustained as a result of that act. *Miller v. Bennett*, 190 Va. 162, 56 S.E. 2d 217 (1949). See also, *Zysk v. Zysk*, 239 Va. 32, 387 S. E. 2d 466 (1990) ( Women who contracted herpes from a man she subsequently married was barred from suing him for personal injuries after they divorced because her premarital sex with him was against the law. ),  and  *Lee v. Nationwide Mutual Ins. Co.*, 255 Va. 279 (1998)  ( 13 year old boy injured while riding in stolen car barred from recovering against negligent driver because of his illegal act.). This same defense has also been frequently recognized in state and federal courts, usually referred to as unclean hands doctrine or in pari delicto.  See for example; *Trustees of AFTRA Health Fund v. Biondi*, 303 F. 3d 765 (7th Cir. 2002).  *Arstine v. Alexander*, 128 P.3d 249 (Colo. App, 2005); *State v. Therrien*, 175 Vt. 342, 830 A.2d 28 (2002); *Blain v. Doctor's Co.*, 222 Cal. App. 3d 1048, 272 Col. Rptr. 250 (3d Dist. 1990).

A fair reading of the Complaint reveals that all of Plaintiff's alleged injuries and damages clearly arise out of his own illegal and immoral conduct, the serial adultery he so graphically describes in his Complaint, and which is unlawful pursuant to Va. Code §18.2-365, and  the disclosure of which he contends caused him such emotional distress, and for which he was found guilty of by the trial court without the use of any allegedly illegal recordings. Despite this conduct, Plaintiff could have avoided all of this (including the attorney's fees he now seeks to recover in this case) by simply responding truthfully to his now former wife's allegations of adultery. His refusal to do so simply compounded the problems caused by his immoral conduct

and he should not be permitted to recover as a result. Plaintiff's immoral conduct far exceeds the

unlawful conduct of the plaintiffs in above cited cases.

3) Violations of the Rules of Professional Conduct do not provide the Basis for a Private Civil
   Cause of Action.

 As spelled out in the Preamble to the Virginia Rules of Professional Conduct, the Rules do

not provide the basis for a private civil cause of action.

> Violation of a Rule should not give rise to a cause of action nor should it create any
> presumption that a legal duty has been breached. The Rules are designed to provide
> guidance to lawyers and to provide a structure for regulating conduct through disciplinary
> agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose
> of the Rules can be subverted when they are invoked by opposing parties as procedural
> weapons.

 Moreover, the Virginia Supreme Court has twice adopted this very position in

*Ayyildiz v. Kidd*, 220 Va. 1080, 266 S.E. 2d 108 (1980) and *Carter v. Williams*, 246 Va. 53, 431

S.E.2d 297 (1993). ("The contestants argue that the trial court erred in excluding evidence that

Williams violated certain disciplinary rules adopted by the Virginia State Bar. We

do not agree. The Code of Professional Responsibility does not provide a basis for a private

cause of action. " *Id*. at p.60.

 In support of the various counts Plaintiff asserts against the Defendant Lawyers, he alleges

that they violated a number of the Rules set out in the Code in paragraph numbers 3, 6, 56, 61,

62, 63, 64 and 66 of the Complaint. Plaintiff re-alleges each of these paragraphs in each count

directed at the Defendant Lawyers. Plaintiff's inclusion and reliance on them here is misplaced as

any alleged violation is irrelevant and immaterial in a civil claim and each count should be

dismissed or, in the alternative, if this court finds that any claim can stand in the absence of such

allegations, each such allegation should be stricken from the Complaint.

8

4) <u>Plaintiff Fails to Allege Facts Which If True Would State a Claim For Emotional Distress Against the Defendant Lawyers.</u>

The United States Court of Appeals for the Fourth Circuit has stated that, "[a] plaintiff seeking to recover for intentional infliction of emotional distress under Virginia law must allege that (1) the defendant's conduct was intentional and reckless; (2) the conduct was outrageous and intolerable; (3) the conduct caused the plaintiff's emotional distress; and (4) the plaintiff's distress was severe." *Hatfill v. New York Times Co.*, 416 F.3d 320, 336 (4th Cir. 2005) (citing *Russo v. White*, 241 Va. 23, 400 S.E.2d 160, 162 (1991). The *Hatfill* court went on to say that, "[a] defendant may be liable for intentional infliction of emotional distress 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Hatfill* at 336 (quoting *Russo*, 400 S.E.2d at 162).

While Plaintiff has alleged the elements of a claim for intentional infliction of emotional distress, he has failed to allege facts which, if true, meet the very high bar for stating such a claim against his now former wife's lawyers. It is respectfully submitted that the allege "use" of such evidence by a lawyer, on behalf of a client, in a judicial proceeding, is in no way so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency or intolerable in a civilized community. There is no allegation that the Defendant Lawyers suggested or encouraged any recordings, much less any illegal ones, or that they knew who made them, when they were made or how they were made, or that they have ever listened to them. Without pleading facts that would clearly show, if proved, that the Defendant Lawyers' conduct went beyond all possible bounds of decency, Count V should be dismissed.

5) Plaintiff Has Failed to State A Claim For Relief Under §2511 (1)(d).

The Fourth Circuit has  stated that in order to hold an attorney who has used or disclosed

telephone conversations intercepted by their client in violation of 18 U.S.C. § 2511 liable, they

would "have to have known, or have had reason to know that [their client] had a criminal or

tortious motive in creating the tapes." *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495

(4th Cir 1995). In *Thompson v. Delaney*, 970 F.2d 744 (10th Cir. 1992) the Tenth Circuit pointed

out that liability under Title III of the federal wiretapping statute premised on the wrongful use or

disclosure of information from a wiretap requires an even "greater degree of knowledge on the

part of the defendant." *Thompson*, 970 F.2d at 749. In addition to proving that the use or

disclosure was done intentionally, a defendant "must be shown to have been aware of the factual

circumstances that would violate the statute. *Id*.

Thus to establish use or disclosure liability, it is insufficient to prove only that the

defendant knew that the information was the product of a wiretap. The reason for this is that not

all wiretaps are illegal *per se*. Section 2511 (2) specifically lists exceptions to the general

prohibition against wiretaps. It is apparent that the intent of Congress was only to deter the use or

disclosure of information illegally obtained in violation of Title III, and not all wiretap evidence.

It would not further the purposes underlying the prohibition against the use or disclosure of such

information to punish people who use or disclose information known to have been obtained from

a wiretap if, in fact, the wiretap was consented to or otherwise lawfully obtained. *Thompson v.*

*Delaney, 838 F. Supp. 1535, 1541 (D. Utah 1993)*.

Therefore, in order for a plaintiff to prevail on a use or disclosure claim, the plaintiff must

prove: (1) that the defendant "knew or should have known" that the information was the product

of an illegal wiretap, and (2) that the defendant had knowledge of the facts and circumstances

surrounding the interception so that he "knew or should have known" that the interception was prohibited under Title III. Id.

This requires the plaintiff to prove that the defendant had notice that neither party consented to the wiretap, since consent would negate the requirement that the party had knowledge that the wiretap was an illegal one. Mere knowledge that the information allegedly used or disclosed came from a wiretap is insufficient unless additional circumstantial proof is introduced that would enable an inference to be drawn that the defendant knew or should have known that the wiretap was an illegal one under Title III. Id.

A careful review of the Complaint demonstrates that Plaintiff has failed to allege facts which, if proven, would show that the Defendant Lawyers were aware of the factual circumstances surrounding the recordings sufficient to make them aware that they were illegally obtained. Plaintiff has failed to allege facts that would show that the Defendant Lawyers knew that neither party to the conversation had consented to the recording. Merely alleging that the Defendant Lawyers had knowledge that the information came from a wiretap is insufficient. The Complaint fails to allege facts that would show that the Defendant Lawyers had this "greater degree of knowledge" and accordingly it should be dismissed.

WHEREFORE, for the forgoing reasons, Defendant Lawyers move this honorable court for entry of an Order dismissing Plaintiff's Complaint herein against them with prejudice and for an award of all costs on their behalf expended.

**GERALD CURRAN, DEMIAN J. McGARRY, AND THE LAW OFFICE OF CURRAN, MOHER, WEIS, P.C.**

By:  /s/ John E. McIntosh, Jr.
Counsel

11

David D. Hudgins (VSB #20602)
John E. McIntosh, Jr. (VSB #20658)
HUDGINS LAW FIRM, P.C.
515 King Street, Suite 400
Alexandria, Virginia  22314
(703) 739-3300 telephone
(703) 739-3700 facsimile
dhudgins@hudginslawfirm.com
jmcintosh@hudginslawfirm.com
*Counsel for defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July 2018, true and correct copy of the foregoing was filed with the Clerk of Court via ECF filing which will send a notification of such filing to all counsel of record as follows:

Jon D. Pels, Esq.
The Pels Law Firm
4845 Rugby Ave.
Suite 300
Bethesda, MD  20814
(301) 986-5571 (telephone)
(301) 986-5571 (facsimile)
Email: jpels@pallaw.com
*Attorney for Plaintiff*

And by U.S. Mail, postage prepaid to:

Kristina Hampton
13558 Mitchells Way
West Friendship, MD  21794
*Co-Defendant*

Derek Hampton
13558 Mitchells Way
West Friendship, MD  21794
*Co-Defendant*

Danielle Richards
2707 Dunleer Road
Ellicott City, MD  21042
*Co-Defendant*

/s/ John E. McIntosh, Jr.
Counsel