**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| TIMOTHY MARSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:18-cv-00787-LO-IDD |
| ) | |
| GERALD CURRAN, ESQ., et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANT LAWYERS' BRIEF IN REPLY

COMES NOW Defendant Lawyers, by counsel, and respectfully submit this Reply Brief in support of their previously filed Motion to Dismiss and/or Strike Plaintiff's Amended Complaint.

1) THE DEFENDANT LAWYERS SHOULD BE IMMUNE FROM LIABILITY FOR ACTIONS TAKEN ON BEHALF OF A CLIENT SOLELY IN CONNECTION WITH A PENDING JUDICIAL PROCEEDING.

In opposition to Defendant Lawyers' contention that Plaintiff's wiretapping claim against them should be barred pursuant to the doctrine of privilege, Plaintiff makes several arguments. First, Plaintiff appears to take the position that the privilege does not exist in a wiretapping case. In support he makes two arguments. First he contends that the Defendant Lawyers only cite an Indiana state court case and the Fourth Circuit's decision in *Culbertson v. Culbertson*, 143 F. 3d 825 (4th Cir. 1998) in support of their position and then argue that they are distinguishable from the facts of this case. Second, he cites two cases from the Sixth Circuit and two district court cases from Nebraska and Oklahoma, for the proposition that an "immunity defense" is not available to lawyers in such cases.

1

As to Plaintiff's first argument, he overlooks (but later discusses) the Seventh Circuit case cited by the Defendant Lawyers expressly stating that the privilege ought to apply to lawyers accused of a wiretapping violation in a manner associated with an ongoing judicial proceeding. *Scheib v. Grant*, 22 F. 3d 149,156 (7th Cir. 1994). The Seventh Circuit went on to discuss the public policy reasons for the privilege, all of which are particularly applicable to this case. As noted in Defendant Lawyers' initial brief, exactly what they know about any recordings of Plaintiff and when they knew it, are all matters covered by Andrea Marsh's attorney/client privilege. Thus, if they are required to defend these claims, they will be put in the very position the *Scheib* court obviously felt they should not be in, having to choose whether to defend themselves or protect their client.

As to Plaintiff's second argument, it is important to note that he cites no Fourth Circuit case holding that the privilege does not exist in wiretapping cases, nor any district court case within the Fourth Circuit. It appears to be an open issue in the Fourth Circuit, although it is important to note that the Fourth Circuit, in a closely analogous case, has held that a husband's divorce lawyer was not liable under the federal wiretapping statute for using illegally obtained recordings of telephone conversations in court. *Culbertson v. Culbertson*, 143 F. 3d 825 (4th Cir. 1998). Clearly the public policy considerations are the same.

Next, Plaintiff argues that there is no factual basis in his own Complaint for the privilege defense. He bold asserts that the Defendant Lawyers had actual knowledge that they were using illegally obtained evidence because it exceeded, "any openly available information and could only have been obtained through illegal interceptions of Plaintiff's telephone and other communications." This is nothing more than a conclusory factual argument. The statement defies logic and reason, as the evidence could have been obtained in numerous other ways, and it

is totally belied by the fact that Plaintiff was found guilty of adultery on legally obtained evidence, evidence that had nothing to do with wiretapping. In short, Plaintiff simply assumes questions asked one of his paramours, after Judge Horne ruled that two recorded conversations were obtained in violation of the state statute, were based on these illegally recorded conversations and wants this court to do the same. As acknowledged in ¶105 of the Amended Complaint, there is no allegation that the Defendant Lawyers ever listened to or were told what was said on the two recordings that, according to the Amended Complaint, were made before the Defendant Lawyers began representing Andrea Marsh, no allegation they knew who made the recordings, when they were made, how they were made or whose voices were recorded, much less whether any of them consented to the recording. In short, there is no allegation that the Defendant lawyers knew the circumstances surrounding the creation of the recordings. It is respectfully submitted that this is exactly the kind of case that calls for immunity, where everything the Defendant Lawyers are alleged to have done was done so in connection with their representation of a party in an ongoing judicial proceeding.

Next Plaintiff repeatedly insists that the Defendant Lawyers "used" illegally obtained evidence in the prosecution of their client's allegations of adultery. It is unclear why Plaintiff raises this argument in opposition to the immunity issue but, in any event, the allegation is solely premised on Plaintiff's conclusory contention that the only possible source of the evidence of Plaintiff's adultery is from illegal recordings of him. The fallacy of that position has been addressed above.

Finally, Plaintiff contends that in order to have his claims thrown out at this stage of the proceedings, this court would have to find that they possessed an unqualified "absolute privilege" established by binding precedent. In support they cite , *Republican Party of North Carolina v.*

*Martin*, 980 F.2d 943 (4th Cir. 1992). *Martin* is a claim about vote dilution in a political gerrymandering case. The case has nothing to do with privilege, much less hold that the privilege does not exist or is not available to an attorney in a wiretapping case, and certainly does not hold that this court is powerless to sustain the motion that has been made. None of the other cases cited by Plaintiff address an immunity defense.

2) PLAINTIFF SHOULD NOT BE ALLOWED TO RECOVER DAMAGES THAT CLEARLY ARISE OUT OF HIS OWN ILLEGAL AND IMMORAL CONDUCT.

Plaintiff concedes that there are numerous state and federal cases which clearly prohibit a plaintiff from recover damages arising out of their own illegal and immoral conduct, but takes the position that the doctrine simply does not apply in a wiretapping case. Plaintiff fails to cite a single case in support of his position. Neither the Fourth Circuit's decision in the *Pritchard* case, or any of the other cases cited by Plaintiff, address this precise issue. Instead he falls back on the proposition that the wiretapping statutes are absolute and the only available exceptions are those specifically enumerated in the statute. This argument, of course, fails to explain the Fourth Circuit's decision in *Culbertson, supra*, where they clearly created an exception to the wiretapping statute.

The doctrine is well grounded in state and federal law and is particularly applicable here, where Plaintiff's admitted conduct so far exceeds that of so many other plaintiffs who have had their claims denied in their entirety due to their illegal and immoral conduct.

3) THE VIRGINIA RULES OF PROFESSIONAL MISCONDUCT ARE IRRELEVANT AND IMMATERIAL TO THE CLAIMS PLEAD AND IN ANY EVENT DO NOT ADDRESS THE PRIVILEGE ISSUE.

Plaintiff's sole response to this contention is that his allegations of unethical conduct are proper to show that the Defendant Lawyers have no privilege to violate the law. A fair reading of

his Amended Complaint clearly shows that is not the reason he alleged violations of the Rules in no less than eight separate pages of his Amended Complaint (See, for example, ¶s 62 and 63 alleging that use of illegal recordings violates Rules 5.3 and 8.4 ; ¶ 66 alleging that unethical conduct caused Plaintiff emotional distress; ¶s 78 and 90 alleging that Defendant Lawyers had an ethical duty to determine if their client had provided them with illegally obtained evidence.) and, more importantly, none of the Rules cited by Plaintiff state that a lawyer has no privilege in any particular situation. Even if they did, pursuant to the Virginia Supreme Court cases previously cited, the Rules provide no basis for any civil claim, which is exactly what Plaintiff cited them for. Plaintiff argues that the Rules are relevant to establish the standard by which the Lawyers' conduct should be judged. That is exactly what the Rules themselves say they were not intended for and not what they should be used for. See, Preamble to the Rules of Professional Conduct, cited in Defendant Lawyers' initial brief, stating that the Rules should not be used to create a presumption that a legal duty has been breached and were not designed to be the basis of civil liability, exactly what Plaintiff here is attempting to do. At the very least these paragraphs of the Complaint should be stricken.

      4) PLAINTIFF'S FACTUAL ALLEGATIONS AS TO THE DEFENDANT LAWYERS,EVEN IF TRUE, DO NOT SUPPORT A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

    Plaintiff contends that the law only requires him to state "relatively simple" allegations that give Defendants "fair notice" of his claim for intentional infliction of emotional distress. In support of this contention Plaintiff cites *Hatfill v. New York Times Co.*, 416 F.3d 320 (4th Cir. 2005), a case published several years before the U. S. Supreme Court handed down *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the now

seminal cases on pleading standards in the federal system. These cases enunciate the standards this court should apply.

In further support of his contention that he has adequately stated a claim, Plaintiff first points to his allegation that he has incurred past and ongoing financial injury, presumably as a result of having been found guilty of adultery, and argues that is sufficient despite having been found guilty of that offense on evidence having nothing to do with wiretapping, not to mention the fact that he voluntarily choose to deny his wife's allegations clearly knowing they were true.

Plaintiff goes on to argue that he was injured by the Defendant Lawyers "continued interceptions" of his calls despite the fact that his Complaint contains no allegations that they were in anyway involved in such conduct. Plaintiff's Amended Complaint only identifies two specific recordings, both of which were made before the Defendant Lawyers took over Andrea Marsh's case, according to Plaintiff's own allegations. Finally, Plaintiff points to his allegation that he was embarrassed and humiliated when the Defendant Lawyers became aware of the "salacious and intimate details of his activities" during the proceedings before Judge Horne, again despite the fact that he was found guilty of adultery on other evidence and that he voluntarily choose to deny what he knew to be true. Plaintiff's argument completely overlooks the fact, as made clear in his Amended Complaint, that it was Plaintiff who found the recorded conversation on a computer he shared with his wife and it was his lawyer who introduced the evidence in court.

As previously argued, it is insufficient for a defendant to have acted with intent that is tortious or even criminal under Virginia law, and it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. It is respectfully submitted that the alleged "use" of evidence

of Plaintiff's adulterous behavior, by an attorney in a judicial proceeding, is in no way so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency or is intolerable in a civilized society, especially when compared to the defendants' conduct in the previously cited cases of *Harris v. Kreutzer*, 271 Va. 188 (2006). *Pacquette v. Nestle USA, Inc*. No. 4.06CV00060, 2007 WL 1343794 (W.D. Va. 2007) and this court's decision in *Long v. Teradata Corp*., No. 1:12-CV-787 JCC/TCB, 2012 WL 3947811 (E.D. Va. 2012)., all of which were held as a matter of law not to rise to the level of actionable conduct despite containing allegations far, far worse than those made by Plaintiff in the present action. Upon this, it is respectfully submitted, reasonable minds cannot differ and the claim should be dismissed.

5) PLAINTIFF HAS FAILED TO PLEAD FACTS WHICH WOULD SHOW THAT DEFENDANT LAWYERS WERE AWARE OF THE RELEVANT FACTUAL CIRCUMSTANCES SURROUNDING THE RECORDINGS.

As articulated in Defendant Lawyers' initial brief, the Fourth Circuit has held in *Bast* that, in order to hold an attorney who has used or disclosed conversations intercepted by their client in violation of 18 U.S.C. §2511 liable, they have to be shown to have known, or had reason to know that their client had a criminal or tortious motive in creating the tapes. The Tenth Circuit has pointed out in *Thompson* that liability premised on use or disclosure requires an even greater degree of knowledge on the lawyers part. In addition to proving that the use or disclosure was intentional, it must be shown that the lawyer was aware of the factual circumstances that would violate the statute. The Fourth Circuit cited with approval the Tenth Circuit's "greater degree of knowledge" requirement in the unpublished case of *Weeks v. Union Camp Corp.,* 215 F. 3d 1323 (4th Cir. 2000). In other words, simply being told by opposing counsel that someone has

7

recorded their client is not nearly enough. In his opposition, Plaintiff doesn't dispute this position, rather he simply states that the allegations in the Complaint are sufficient.

The Amended Complaint fails in this regard as there is no allegation that the Defendant lawyers were aware of all of the circumstances surrounding the creation of the recordings that were made before they were retained. There is no allegation they ever listened to them, were ever told everything that was on them, knew when they were made or how they were made, or even knew who all of the parties to the conversations were, much less that none of them consented to the recording. In the absence of such allegations the Amended Complaint should be dismissed.

As recently pointed out by codefendants, Plaintiff merely pleads conclusory allegations upon information and belief and then later restates the same allegations, without adding any new facts, but then omitting that the earlier pled facts were upon information and belief. It should be dismissed.

**GERALD CURRAN, DEMIAN J. McGARRY, AND THE LAW OFFICE OF CURRAN, MOHER, WEIS, P.C.**

By: /s/ John E. McIntosh, Jr.
Counsel

David D. Hudgins (VSB #20602)
John E. McIntosh, Jr. (VSB #20658)
HUDGINS LAW FIRM, P.C.
515 King Street, Suite 400
Alexandria, Virginia 22314
(703) 739-3300 telephone
(703) 739-3700 facsimile
dhudgins@hudginslawfirm.com
jmcintosh@hudginslawfirm.com
*Counsel for defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of September, 2018, true and correct copy of the foregoing was filed with the Clerk of Court via ECF filing which will send a notification of such filing to all counsel of record as follows:

Jon D. Pels
Kerry Edwards, admitted *Pro Hac Vice*
Alvaro Llosa, admitted *Pro Hac Vice*
The Pels Law Firm
4845 Rugby Ave.
Suite 300
Bethesda, MD  20814
(301) 986-5571 (telephone)
(301) 986-5571 (facsimile)
Email: jpels@pallaw.com
kedwards@pelslaw.com
allosa@pelslaw.com
*Attorneys for Plaintiff*

Bernard J. DiMuro
M. Jarrad Wright
Jayna Genti
DiMuroGinsberg, PC
1101 King Street, Suite 610
Alexandria, Virginia  22314
(703) 684-4333 (telephone)
(703) 548-3181 (facsimile)
Email: mjwright@dimuro.com
jgenti@dimuro.com
*Counsel for Co-Defendants Kristina Hampton, Derek Hampton and Danielle Richards*

                                          /s/ John E. McIntosh, Jr.
                                          Counsel