IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TIMOTHY MARSH, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Civil Action No. 1:18-cv-787 |
| v. ) | Hon. Liam O'Grady |
| ) | |
| GERALD CURRAN, ESQ., et al., ) | |
| ) | |
| *Defendants.* ) | |
| _____) | |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendants' Motions to Dismiss for Lack of Jurisdiction (Dkts. 38, 40, & 42). The motions were fully briefed and the Court dispensed with oral argument, finding that oral argument would not aid the Court in its decision. For the reasons stated below and for good cause shown, Defendants' Motions to Dismiss (Dkts. 38, 40, & 42) are **GRANTED IN PART, DENIED IN PART.**

### I. BACKGROUND

Plaintiff has sued his wife's lawyers ("Defendant Lawyers") and members of her family (Kristina Hampton, Derek Hampton, and Danielle Richards; collectively "Family Defendants") for allegedly recording Plaintiff's conversations with his attorneys and purported romantic partner, Monika Pawar, and using the contents of those recordings in his underlying divorce proceedings. Am. Compl. ¶¶ 2-3.

Plaintiff's wife, Andrea Marsh, filed for divorce alleging that Plaintiff had committed adultery. *Id.* ¶ 17. Plaintiff alleges that the Hamptons and his wife worked together to place

recording devices in his home, car, and/or phone. *Id.* ¶ 20. According to Plaintiff, Derek Hampton is "an information security and computer networking specialist" with "access to and expertise in technology and computer software that would enable him to engage in and assist Andrea Marsh and the other Non-Lawyer Defendants in surreptitiously intercepting Plaintiff's private electronic communications." *Id.* ¶ 20. Plaintiff claims to have viewed numerous emails between his wife and the Family Defendants circulating and describing the contents of his private conversations with others. *Id.* ¶ 22. Plaintiff also found a journal entitled "Andrea Marsh Journal of Tim's Activities," which appears to be authored by Defendant Richards. *Id.* ¶¶ 35–38, Ex. E, Ex. F. Plaintiff alleges that "Defendants K Hampton and D Richards, with the assistance and support of Defendant D Hampton, transcribed the contents of the intercepted" communications into the journal and shared the information with each other, Plaintiff's wife, and Defendant Lawyers. *Id.* ¶ 35.

Plaintiff's wife also sent emails to Defendant Curran, one of her lawyers, describing the intercepted private communications between Plaintiff and his lawyer, and between Plaintiff and the woman with whom he was allegedly committing adultery, Monika Pawar. *Id.* ¶¶ 24–25, Ex. A (copy of an email). Defendant Lawyers allegedly utilized information gathered from the recordings in the underlying divorce proceeding, such as when questioning Monika Pawar, despite knowing or having notice that their client and her family had illegally wiretapped Plaintiff. *Id.* ¶¶ 44–60, ¶¶ 73–105, Exs. 8–14.

Plaintiff has also alleged that Defendants shared the contents of his private communications to individuals not associated with his divorce case, including his co-workers, neighbors, friends, and spouses of his business associates. *Id.* ¶ 69.

During Plaintiff's divorce proceedings, Judge Horne found that the recordings were obtained in violation of a wiretapping statute. *Id.* ¶ 4, ¶ 33, Ex. B. at 118–19.

Plaintiff further alleges that his wife and Family Defendants illegally viewed and shared his private financial and identifying information. *Id.* ¶ 27. Plaintiff has produced an email from Defendant Kristina Hampton to one of the Defendant Lawyers describing and attaching some of Plaintiff's financial transactions. *Id.* ¶ 28, Ex. C. He has also produced an email suggesting that both the Hamptons had viewed Plaintiff's financial transactions. *See id.* Ex. C at 9.

Plaintiff alleges that all Defendants violated federal and state wiretapping laws, intentionally inflicted emotional distress, and aided and abetted. *Id.* Counts I, II, V, VI. Plaintiff also alleges that the Hamptons violated Virginia's Computer Crimes Act. *Id.* Counts III, IV. Finally, Plaintiff has brought a claim for temporary and permanent injunctive relief. *Id.* Count VII. All Defendants moved to dismiss Plaintiff's Amended Complaint for failure to state a claim.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the

factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely,'" *id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), so long as the complaint states a claim that is "plausible" and not merely "conceivable," *Twombly*, 550 U.S. at 569.

## III. ANALYSIS

### A. Defense of Unclean Hands.

All Defendants argue that Plaintiff is barred from recovery due to unclean hands. Unclean hands is an equitable defense. *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 388 (4th Cir. 1982). Motions to dismiss under Rule 12(b)(6) do not resolve the applicability of defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Hence, Defendants' assertions that Plaintiff has unclean hands do not compel dismissal of Plaintiff's claims.

### B. Counts I & II: Wiretapping Claims Against All Defendants.

#### 1. Wiretapping Claims Against Defendant Lawyers.

*i. There is No Litigation Privilege or Absolute Immunity to Violations of the Wiretapping Statutes.*

Defendant Lawyers argue that the wiretapping claims against them should be dismissed because their alleged use of the contents of the illegal recordings is privileged and entitled to absolute immunity. The Court disagrees.

The plain language of both the federal and the Virginia wiretapping statutes precludes attorneys from using or disclosing illegal recordings, and information derived from such recordings, even in a manner intimately associated with ongoing judicial proceedings. Both

4

statutes prohibit "*any* person" – which includes attorneys – from intentionally using or disclosing "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication" in violation of the statutes. 18 U.S.C. § 2511(1) (emphasis added); Va. Code. Ann. § 19.2-62(A) (emphasis added). While both statutes provide for limited exceptions, none of the provided exceptions include use by an attorney in a manner intimately associated with ongoing judicial proceedings. *See id.* Indeed, both statutes contain a provision prohibiting courts from receiving into evidence any part of intercepted communications or "evidence derived therefrom." 18 U.S.C. § 2515; Va. Code. Ann. § 19.2-65. Thus, by their terms, the wiretapping statutes prohibit the use and disclosure of wiretapped communications or information derived from such communications by attorneys in a manner intimately related to judicial proceedings. *See United States v. Crabtree*, 565 F.3d 887, 888, 891 (4th Cir. 2009) (finding that the federal wiretap statute precluded government attorneys from introducing evidence of intercepted communications and noting that the statute "explicitly applies to private parties as well as government officials"); *Nix v. O'Malley*, 160 F.3d 343, 352 (6th Cir. 1998) ("We decline . . . to immunize attorneys for certain violations of [federal] and Ohio wiretap law" because the "proposed immunity contravenes the plain language of federal and state wiretap statutes."); *United States v. Wuliger*, 981 F.2d 1497, 1505 (6th Cir. 1992) ("There is nothing in the [federal wiretapping statute] which affords attorneys special treatment.").

The narrow impeachment exception to the wiretapping statutes that courts have recognized, *see, e.g., Culbertson v. Culbertson*, 143 F.3d 825, 827–28 (4th Cir. 1998), cannot be extended into a blanket "litigation privilege." In *Crabtree*, the Fourth Circuit held that the federal wiretapping statute, which has the same language as the Virginia wiretapping statute, "clearly

5

and unambiguously" prohibits a government attorney from introducing evidence derived from an illegal wiretap in a supervised release revocation proceeding. *Crabtree*, 565 F.3d at 888–89. Because the statutes explicitly apply to "any person," not just government officials, it clearly follows from *Crabtree* that non-government attorneys also cannot use improperly intercepted communications in court. In reaching its holding in *Crabtree*, the Fourth Circuit explicitly considered and rejected the argument that the impeachment exception required the court to recognize another exception that would have allowed the government attorneys to use the illegal recordings as evidence. *Id.* at 891–92. *Crabtree* therefore suggests that the Fourth Circuit would not recognize a litigation privilege exception to the wiretapping statutes' prohibitions.

Recognizing a litigation privilege or immunity would also violate the clear purpose underlying the wiretapping statutes. The statutes were created to protect individuals' privacy from unauthorized invasions. *Id.* at 889 ("'The protection of privacy was an overriding congressional concern' when [the federal wiretapping statute] was enacted." (quoting *Gelbard v. United States*, 408 U.S. 41, 48 (1972))). Use and disclosure of unlawfully obtained private information harms an individual's privacy even when the use or disclosure occurs in a manner intimately associated with judicial proceedings. *Id.* at 890. Permitting attorneys to use or disclose unlawfully intercepted information to advance their client's position in court would thus undermine the purpose of the statutes even when the attorneys did not participate in the unlawful interception. *Id.*

Defendant Lawyers cite to a Seventh Circuit case, *Scheib v. Grant*, 22 F.3d 149 (7th Cir. 1994), to argue that policy concerns support recognizing a litigation privilege exception to the wiretapping statutes. In *Scheib*, the Seventh Circuit held that attorneys were absolutely immune from liability under *Illinois's* wiretapping statute for their disclosure of recorded conversations

"only to persons intimately involved in the ongoing state court litigation." *Scheib*, 22 F.3d at 156–7. In reaching this conclusion, the court found that recognizing such immunity would "most securely advance[]" "the truth-seeking process of a judicial proceeding" and judicial safeguards such as the suppression of evidence would protect against abuse of the privilege. *Id.* at 156.

The Seventh Circuit did not consider whether the attorneys would have been absolutely immune under either of the statutes at issue in this case. More importantly, the Fourth Circuit rejected a similar policy argument in interpreting the federal wiretapping statute in *Crabtree*. In holding that government attorneys were barred by the federal wiretapping statute from using illegal recordings of a former prisoner threatening arson in supervised release revocation proceedings, the Fourth Circuit "recognize[d], of course," that its holding "could on occasion prevent the government from obtaining a criminal conviction." *Crabtree*, 565 F.3d at 890. Nevertheless, the Fourth Circuit determined that its holding was necessitated by the language of the statute and the policy balance struck by Congress. *Id.* This court agrees with the Fourth Circuit's reasoning and finds that it clearly follows from the Fourth Circuit's binding decision that there is no litigation privilege exception to the wiretapping statutes.

Moreover, several courts, including the Sixth Circuit, have expressly rejected the litigation privilege asserted by Defendant Lawyers. In *Nix v. O'Malley*, the Sixth Circuit expressly "decline[d]" the "invitation to immunize attorneys for certain violations of [federal] and Ohio wiretap law" even though the attorneys "disclosed the contents of the intercepted communications in relation to a judicial proceeding." 160 F.3d at 352. Previously, in a case strikingly similar to the present case, the Sixth Circuit had held that "[t]here is nothing in the [federal wiretapping statute] which affords attorneys special treatment." *Wuliger*, 981 F.2d at 1505. Similarly, courts in Nevada and Oklahoma have rejected common-law immunity and

litigation privilege defenses in the context of child custody disputes. *Lewton v. Divingnzzo*, 772 F. Supp. 2d 1046, 1057–58 (D. Neb. 2011); *Babb v. Eagleton*, 616 F. Supp. 2d 1195, 1207–08 (N.D. Okla. 2007). In fact, the *Lewton* court ultimately found an attorney liable under the federal wiretapping statute for "intentionally using and disclosing the plaintiffs' oral communications [] for the purpose of advancing [his client's] position in the state court Custody Case." 772 F. Supp. 2d at 1060. The Court has reviewed the opinions issued in each of these cases and finds them persuasive.

The Court also disagrees with Defendant Lawyers that the attorney-client privilege will prevent them from defending themselves. A client's disclosure of information she obtained in violation of wiretapping laws to her attorneys for a purpose other than defending herself against wiretapping charges violates the wiretapping laws. *See* 18 U.S.C. § 2511(1); *Nix*, 160 F.3d at 351 (finding that a client can disclose the contents of intercepted communications to her attorneys when the client faces wiretap charges, but that disclosure or use "for purposes other than to prepare a defense against [] wiretap charges, exceeds the bounds of the privilege"); *Smoot v. United Transp. Union*, 246 F.3d 633, 646 (6th Cir. 2001) ("[T]he defense and adjudication exceptions under *Nix* do not apply to Plaintiff's distribution of the executive session transcript to his lawyer ... because Plaintiff was not, at that time, defending against charges brought under the [federal wiretap] Act."). Those communications are therefore not protected by the attorney-client privilege because of the crime-fraud exception. *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 661 F. Supp. 1482, 1489 (N.D. Ill. 1987) (finding a client's communications with his attorneys "about using information from the intercepted conversations to prepare and prosecute this lawsuit fall within the crime/fraud exception to the attorney-client privilege").

For all these reasons, the Court holds that Defendant Lawyers are not immune from liability under the federal and Virginia wiretapping statutes. "Zealous defense of a client does not permit law-breaking." *Nix*, 160 F.3d at 353.

> ii. *Plaintiff Sufficiently Pled that Defendant Lawyers Had Reason to Know the Information Was Obtained in Violation of the Wiretapping Statutes.*

In the alternative, Defendant Lawyers argue Plaintiff failed to state a claim that Defendant Lawyers violated the wiretapping statutes because Plaintiff has not sufficiently alleged that Defendant Lawyers knew or had reason to know that the information they used in the divorce proceedings was obtained through an unauthorized wiretap. However, Plaintiff alleged sufficient facts to show that Defendant Lawyers were at least on inquiry notice that the information their client shared was obtained through an unauthorized wiretap. Plaintiff's wife knew very specific details about Plaintiff's conversations with his romantic partner and attorney. Given the private nature of the conversations' content and the estrangement between Plaintiff and his wife, Defendant Lawyers should have at least suspected that none of the parties involved consented to their conversations being intercepted. Indeed, Defendant Lawyers were allegedly told their client was suspected of having electronically surveilled Plaintiff without his permission and asked in discovery responses to provide discovery related to that surveillance. Plaintiff has thus alleged sufficient facts supporting a plausible claim that Defendant Lawyers used the information disclosed "knowing or having reason to know" that the information had been obtained in violation of the wiretapping statutes.

Finally, Defendant Lawyers ask the Court to strike the portions of the Amended Complaint alleging that the Defendant Lawyers violated the Virginia Rules of Professional Conduct because any violation of such rules "is irrelevant and immaterial in a civil claim." Dkt.

39 at 8. To the contrary, Defendant Lawyers' ethical and professional obligations are relevant to whether Defendant Lawyers should have known that the information was obtained through an unauthorized wiretap. As a result, the Court will not strike the portions of Plaintiff's Amended Complaint referring to Defendant Lawyers' ethical and professional obligations.

### 2. Wiretapping Claims Against Family Defendants.

Family Defendants argue that Plaintiff has not alleged sufficient facts linking them to his wife's alleged recordings. Plaintiff alleges that Defendant Derek Hampton had the tools and skill that would have allowed Plaintiff's wife and Family Defendants to intercept his communications. Am. Compl. ¶ 20. Plaintiff then alleges that he has viewed emails in which the Family Defendants discussed the recorded conversations and circulated a journal, authored by Defendant Richards, in which the Family Defendants took turns transcribing the contents of Plaintiff's intercepted communications. *Id.* ¶¶ 22, 35–38. Plaintiff has thus alleged facts supporting a plausible claim that Family Defendants participated in illegally recording Plaintiff's conversations and disclosing the contents of those conversations to others. The fact that Plaintiff makes most of these allegations "on information and belief" does not provide a basis to dismiss the claims because the facts that would establish whether Family Defendants were involved in intercepting and disclosing Plaintiff's communications "are peculiarly within the possession and control of the defendant[s]" and there is "factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Plaintiff has sufficient facts to make almost all of his paragraph claims without adding "upon information and belief." Plaintiff has therefore stated a claim for wiretapping violations by Family Defendants and is entitled to seek discovery on those claims.

## C. Counts III & IV: Computer Crimes Claims Against the Hamptons.

Counts III and IV allege that the Hamptons violated the Virginia Computer Crimes Act by (1) examining Plaintiff's private financial and identifying information and (2) recording Plaintiff's keystrokes. The Hamptons argue Plaintiff failed to allege any facts raising a reasonable inference that the Hamptons installed a keystroke logger on his computer or reviewed his financial or identifying information.

Plaintiff has pled the elements of Counts III and IV "on information and belief," but has also alleged facts and attached exhibits that provide factual support for his allegations. Plaintiff attached and recounted emails between Defendant K. Hampton and his wife referencing "instructions" from Defendant D. Hampton, a computer information and network security specialist. Am. Compl. ¶ 27, Ex. C. Plaintiff also attached and recounted emails sent by Defendant K. Hampton that attached and described some of Plaintiff's financial transactions. Am. Compl. ¶ 28, Ex. C. Because evidence related to the computer crimes claims "are peculiarly within the possession and control of the defendant[s]" and the pleaded facts of the case "make[] the inference of culpability plausible," Plaintiff is entitled to discovery on the computer crimes claims. *Arista Records*, 604 F.3d at 120.

## D. Count V: Intentional Infliction of Emotional Distress Claim.

In Count V, Plaintiff claims the Defendants intentionally inflicted emotional distress on him. To state a claim for intentional infliction of emotional distress under Virginia law, "[t]he plaintiff must show that 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Williams v. Agency, Inc.*, 997 F. Supp. 2d 409, 413 (E.D. Va. 2014) (quoting *Supervalue, Inc. v.*

*Johnson*, 666 S.E.2d 335, 343 (Va. 2008)). The pleading standard set forth in Federal Rule of Civil Procedure 8, rather than Virginia's heightened pleading standard, governs the analysis of whether Plaintiff has properly stated a claim for intentional infliction of emotional distress. *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 758–59 (E.D. Va. 2016).

A defendant "inflict[s] emotional distress recklessly if he takes an action without regard to the risk of causing emotional distress to a victim when he knew or could have been expected to know of the risk." *Williams*, 997 F. Supp. 2d at 414. As argued above, Plaintiff has sufficiently alleged that each of the Defendants were involved in the interception and/or use or disclosure of the contents of his private communications. He has also alleged facts that, if true, could lead a reasonable jury to determine that each Defendant knew or should have known that Plaintiff's communications were intercepted without his authorization in violation of the wiretapping statutes. It is common knowledge that an individual would suffer emotional distress by learning that his communications with his attorney and romantic partner were intercepted, shared, and used against him in his divorce. Therefore, Plaintiff has sufficiently pled that Defendants' conduct was reckless. *Cf. id.* (finding this element satisfied "because the possible emotional impact of discovering that one has been secretly taped having intercourse in a private residence can be considered 'common knowledge.'").

Plaintiff has also sufficiently pled that the conduct was outrageous or intolerable. Surreptitiously recording an individual's confidential communications with his attorney and private communications with his romantic partner in his home and car is intolerable conduct. *Cf. id.* (finding that defendants' "surreptitious videotaping of Plaintiffs engaged in an intimate affair in the sanctity of [one of their] private residence[s] amounts to outrageous conduct that is 'utterly intolerable in a civilized community'"). Similarly, a reasonable jury could determine that

Defendant Lawyers' alleged use and disclosure of the contents of those communications in the context of the underlying divorce proceeding was outrageous or intolerable. *See id.* As a result, Plaintiff has sufficiently pled that the Defendants engaged in outrageous or intolerable conduct.

Plaintiff alleges that Defendants' conduct was the cause of his emotional distress, so the causation element has been sufficiently pled. *Id.* at 414–15.

Finally, Plaintiff has sufficiently pled that his emotional distress was severe. The Fourth Circuit has found this element sufficiently pled where a plaintiff alleged "severe and ongoing loss of reputation and professional standing, loss of employment, past and ongoing financial injury, severe emotional distress and other injury." *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005). Plaintiff has alleged that because of Defendants' conduct, he has (a) suffered severe humiliation, embarrassment, and distress, (b) is continuously on edge, (c) has had to seek out public locations to avoid surveillance of his private communications, and (d) is suffering ongoing financial injury and reputational harm from Defendants' conduct. Am. Compl. ¶¶ 66–72. These allegations are sufficient to meet the standards for pleading severe emotional distress. *See Williams*, 997 F. Supp. 2d at 415 (finding this element satisfied where the plaintiff claimed that "he suffered severe emotional distress, is constantly terrified that [his girlfriend] is being watched . . . , and is constantly checking the blinds when he is in [his girlfriend's] home.").

Plaintiff's allegations have thus given Defendants fair notice of his intentional infliction of emotional distress claim, and the grounds upon which it rests, and therefore adequately state a claim for intentional infliction of emotional distress. *Hatfill*, 416 F.3d at 337.

### E. Count VI: Aiding & Abetting Claim.

In Count VI, Plaintiff asserts Defendants should be held liable for aiding and abetting. The text of Count VI appears to limit Plaintiff's aiding and abetting claim to Defendants' actions

related to the interception of his communications and the subsequent use and disclosure of the contents of those communications. Plaintiff has sufficiently pled that all Defendants violated the wiretapping statutes and aided and abetted others in doing so. The case law is uncertain as to whether there is an independent cause of action for aiding and abetting in Virginia, *Jordan v. Osmun*, 2016 WL 7173784, at *4 (E.D. Va. Dec. 8, 2016), but a number of cases have concluded that there is. *See, e.g.*, *Tysons Toyota v. Globe Life Ins. Co.*, 1994 U.S. App. LEXIS 36692, at *9 (4th Cir. Dec. 29, 1994); *Priester v. Small*, 2003 WL 21729900, at *5 (Va. Cir. Ct. April 14, 2003); *Sherry Wilson & Co., Inc. v. Generals Court, L.C.*, 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002). Accordingly, without deciding whether an independent cause of action for aiding and abetting violations of the wiretapping statutes exists in Virginia, the Court finds that Count VI should survive the present Motions to Dismiss. The Court will reexamine this issue at a later date if necessary.

### F. Count VII: Injunctive Relief Claim.

In Count VII, Plaintiff asks for temporary and permanent injunctions pursuant to 18 U.S.C. § 2520(b) requiring Defendants to (i) cease using and disclosing the allegedly illegally obtained information and (ii) preserve material evidence. 18 U.S.C. § 2520(b) provides the remedies courts are authorized to grant in a civil action for violations of the federal wiretapping act; it does not provide for a separate cause of action. As such, Count VII of the Complaint is **DISMISSED WITH PREJUDICE**. If Plaintiff wishes to seek an injunction prior to the completion of the case, Plaintiff may file a separate motion requesting that relief.

### G. Defendants' Request that the Court Deny Plaintiff Leave to Further Amend His Complaint.

Family Defendants request that Plaintiff be denied further leave to amend his complaint. Their request is premature as there is no motion for leave to amend before the court. The request

14

is also moot, as the Court has dismissed one of the counts with prejudice and found that the remaining counts survive the Motions to Dismiss. If further amendment to the Complaint is sought, the Court will consider it at that time.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, Defendants' Motions to Dismiss (Dkts. 38, 40, & 42) are **GRANTED** to the extent that Count VII is **DISMISSED WITH PREJUDICE** and **DENIED** in all other respects.

It is **SO ORDERED.**

January 25, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge